STATE OF OKLAHOMA ex rel. PHILLIPS, Governor, v. GUY F. ATKINSON CO. et al.

No. 348.

District Court, E. D. Oklahoma.

Jan. 25, 1941.

Judgment Affirmed June 2, 1941.

See 61 S.Ct. 1050, 85 L.Ed. ——.

94

Mac Q. Williamson, Atty. Gen. of Oklahoma, Randell S. Cobb, of Oklahoma City,

Okl., C. C. Hatchett, of Durant, Okl., and Wm. O. Coe, of Oklahoma City, Okl., for plaintiffs.

Norman M. Littell, Asst. Atty. Gen., Charles O. Butler, Atty., Department of Justice, of Washington, D. C., and Cleon A. Summers, U. S. Atty., of·Muskogee, Okl., for defendants.

Before HUXMAN and MURRAH, Circuit Judges, and RICE, District Judge.

RICE, District Judge.

By this action the State of Oklahoma, upon the relation of Leon C. Phillips, Governor, challenges the right of the defendants to proceed with the construction of what is commonly known as the Denison Dam. The dam is now in the process of construction across Red River near Denison, Texas, and from a point in Bryan County, Oklahoma. The defendant, Guy F. Atkinson Company, a corporation, is the contractor and it is charged in the bill of complaint that he is purporting. to act under a contract with the Secretary of War. The defendant, Cleon A. Summers, is the United States District Attorney for the Eastern District of Oklahoma. Curtis P. Harris, defendant, is a Special Attorney for the Department of Justice of the United States. As to the latter two defendants, it is charged that they have already instituted numerous suits for the condemnation of lands within the proposed area of the dam, and, unless enjoined, will institute other suits for the condemnation of lands within the State of Oklahoma. The plaintiff further alleges that the defendants are proceeding under a certain act of Congress passed and approved on June 28, 1938, being H. R. 10618, public No. 761, 75th Congress, chapter 795, 52 Stat. 1215, styled "An Act authorizing the construction of certain public works on rivers and harbors for flood control, and for other purposes", and that this Act of Congress is unconstitutional and void, contravening powers reserved to the plaintiff by the Tenth Amendment; that it is wholly beyond the power of Congress to enact; that the project and scheme as outlined in the Act authorizing its construction and in House Document No. 541. referred to in the Act are not for a public purpose and are not within either the expressed or implied powers of Congress.

Other allegations contained in the plaintiff's bill are that if the dam is constructed as contemplated, it will inundate approximately one hundred thousand acres of lands within the State of Oklahoma, much of which land is owned by the State of Oklahoma in fee simple; that it will destroy many of the highways of the State of Oklahoma; that it will compel eight thousand residents of the State of Oklahoma to move; that it will seriously affect political subdivisions of the State of Oklahoma, both counties and school districts, in that much of the lands situated in such subdivisions will be taken; that much of the lands within the area affected are oil producing lands and that the ·building of the dam will seriously affect the development of these oil lands and will deprive the State of Oklahoma of much revenue to be derived from the gross production tax on the oil and gas that might be produced; that the impounding of the waters behind said dam would cover lands in both the State of Texas and the State of Oklahoma and would thereby obliterate the boundary line between the two states; that under the plan it is contemplated that waters from both the Red River and the Washita River, a non-navigable tributary of the Red River wholly within the State of Oklahoma, are to be impounded and thereafter conducted through conduits into the State of Texas and there conducted through turbines for the purpose of generating electrical power; that the plan for the construction of said dam as disclosed in House Document 541 contemplates the construction of a dam for both flood control purposes and for the purpose of the generation of hydroelectric power; that the two purposes are functionally separate and neither is incidental or a necessary result of the other; that the electric power feature is not in aid of nor related to flood control; that Red River within the State of Oklahoma is a non-navigable stream; that the non-navigability of Red River within the State of Oklahoma was determined by the Supreme Court of the United States in the case of State of Oklahoma, Complainant v. State of Texas, Defendant, United States, Intervener, 258 U.S. 574, 42 S.Ct. 406, 66 L.Ed. 771, decided May 1, 1922.

The prayer of the plaintiff's bill of complaint is that the contractor, Guy F. Atkinson Company, its agents, servants and employees, be permanently restrained and enjoined from constructing the dam in question and that the defendants, Cleon ˙A. Summers and Curtis P. Harris, be enjoined and restrained from instituting and conducting in any court within the State of Oklahoma any suit or proceeding for the

condemnation of any lands owned by plaintiff or located within its domain for the purpose of obtaining a site or right-of-way for said dam or the reservoir to be created thereby.

■ The defendants, represented by the Department of Justice of the United States, have filed a motion to dismiss. This motion to dismiss presents, first, the jurisdiction of the court to entertain this suit, and, second, appropriately raises the constitutionality of the Act of Congress involved. The accepted procedure for presenting this constitutional question is by motion to dismiss. Arizona v. California, 283 U.S. 423, 51 S.Ct. 522, 75 L.Ed. 1154; Steward Machine Company v. Davis, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279, 109 A.L.R. 1293; New Jersey v. Sargent, 269 U.S. 328, 46 S.Ct. 122, 70 L.Ed. 289.

■■ At the threshold we are met with the objection to jurisdiction. Defendants contend that the government is the real party in interest, and, its consent not having been given, it may not be sued, and that the Secretary of War is an indispensable party. The immunity of the government from suit, to which it has not consented, is a principle too well established to require citation of authority. Is this a suit against the government? On the face of the pleadings it is not. The plaintiff is proceeding against the individudal defendants on the theory that the Act of Congress under which they are admittedly acting is unconstitutional. Although there may be some slightly apparent conflict in the decisions, we think it is fairly well established that if an agent of the government acts without authority or attempts to act under a void or unconstitutional Act of Congress, he ceases to act in an official capacity and a suit against him is not a suit against the government, in such case the theory or fiction, if we would call it such, being that the government can act only under constitutional authority. It follows that the exemption of the government from suit does not exempt or protect its officials from being sued when they are proceeding without authority or under an unconstitutional Act of Congress. Otherwise, there would be no constitutional limitations, since there would be no way of testing the constitutionality of the challenged procedure. Philadelphia Company v. Henry L. Stimson, Secretary of War, 223 U.S. 605, 32 S.Ct. 340, 56 L.Ed. 570; Ickes v. Fox, 300 U.S. 82, 57 S.Ct. 412, 81 L.Ed. 525; Keifer &

Keifer v. Reconstruction Finance Corporation, 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784; Ryan v. Chicago, B. & Q. Railroad, 7 Cir., 59 F.2d 137; Franklin Township v. Tugwell, Administrator of Resettlement Administration, 66 App.D.C. 42, 85 F.2d 208; United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171.

■■ If the Act of Congress is unconstitutional, then the Secretary of War is not a necessary party. Colorado v. Toll, 268 U.S. 228, 45 S.Ct. 505, 69 L.Ed. 927; Missouri v. Holland, 252 U.S. 416, 40 S.Ct. 382, 64 L.Ed. 641, 11 A.L.R. 984; Ryan v. Amazon Petroleum Corporation, 5 Cir., 71 F.2d 1. In Colorado v. Toll, supra [268 U.S. 228, 45 S.Ct. 506, 69 L.Ed. 927], the court says: "The object of the bill is to restrain an individual from doing acts that it is alleged that he has no authority to do and that derogate from the quasi-sovereign authority of the State. There is no question that a bill in equity is a proper remedy and that it may be pursued against the defendant without joining either his superior officers or the United States". It would seem, therefore, that if the Act is unconstitutional, the authorities sustain the right of the state to maintain the action, the appropriateness of injunctive relief, that it is not a suit against the United States, that the Secretary of War is not a necessary party. And, since the Act of Congress in question is challenged by the plaintiff as unconstitutional, and the constitutionality of the said Act is asserted by the defendants, who are within the jurisdiction of this court and have been served by proper process, this court has jurisdiction to entertain the suit and must of necessity determine or pass upon the constitutionality of the Act. The question and the manner in which it is presented, rather than the ultimate answer, determine jurisdiction.

■ The motion to dismiss admits all facts well pleaded. It does not admit conclusions of law or deductions of fact not warranted. Most of the allegations of plaintiff's complaint are immaterial in so far as the constitutionality of the Act in question is involved. Upon oral argument the attorneys for the plaintiff conceded that if the Act of Congress in question is constitutional, the motion of the defendant to dismiss should be sustained. They further admitted that in the determination of the constitutionality of the Act, assuming the truth of all well pleaded allegations, no evidence was necessary or proper. They

further admitted upon oral argument and in their brief that if the Act is constitutional, the government may acquire any and all lands by condemnation proceedings, even the lands of the State of Oklahoma, needed in the construction of this project. The sole question, therefore, before the court upon this motion to dismiss is whether or not the Act is constitutional.

The contention of the plaintiff is that the construction of this dam has no relation to navigation; that the Act of Congress originally provided for a dam for two purposes, to wit: flood control and hydroelectric purposes; and that the inclusion of the hydroelectric feature rendered the entire Act unconstitutional; that it would not be necessary for the court to pass upon whether or not the dam could be built for flood control purposes, since the inclusion of the hydroelectric feature would in all events render the Act unconstitutional for the reason that the government may not impound the waters of a non-navigable portion of a stream even for a lawful purpose and thereafter use the waters impounded for generating electric power.

The Act of Congress of June 28, 1938, under which the defendants are proceeding, is entitled "An Act authorizing the construction of certain public works on rivers and harbors for flood control, and for other purposes". 52 Stat. 1215. This is a comprehensive Act dealing with flood control projects in many parts of the United States. The declared purpose of the Act, as contained in Section 4, is "that the following works of improvement for the benefit of navigation and the control of destructive flood waters and other purposes are hereby adopted and authorized * * *". In the original Act, after a statement of the general purpose contained in Section 4, with specific reference to the Denison Dam, the following language is used: "The Denison Reservoir on Red River in Texas and Oklahoma for flood control and other purposes as described in House Document Numbered 541, Seventy-fifth Congress, Third session, with such modifications thereof as in the discretion of the Secretary of War and the Chief of Engineers may be advisable, is adopted and authorized at an estimated cost of $54,000,000". By an Act approved October 17, 1940, H.R. 9972, Public No. 868, Chapter 895, 76th Congress, 3d Session, in Section 4 thereof, 54 Stat. 1200, Congress declared: "The project for the Denison Reservoir

on Red River in Texas and Oklahoma, authorized by the Flood Control Act approved June 28, 1938, is hereby declared to be for the purpose of improving navigation, regulating the flow of the Red River, controlling floods, and for other beneficial uses." This last Act of Congress the plaintiff designates as no more than a self-serving declaration by Congress. This Act was passed by Congress with a full knowledge of the changes made in the plans as described in House Document 541, and may be considered as a ratification of the changes and modifications. It further reaffirmed the purpose of Congress in authorizing the construction of the dam. It might be observed that the declared purpose in the Act of October 17, 1940, is in no substantial particular different from that of Section 4 of the Act of June 28, 1938. It is merely a bit more specific. There is no substantial difference between "benefit of navigation" and the more specific statement "purpose of improving navigation, regulating the flow of the Red River". In substance they mean the same. It seems further that the purposes as set forth in Section 4 of the Act of 1938 apply to all of the projects contained in the said Act, even though Congress in making the specific reference to the Denison Dam used the language "for flood control and other purposes". Certainly the Act of October 17, 1940, would remove any doubt that might exist by reason of the use of the particular language in the Act of 1938.

The plaintiff in this case in effect asks the court to determine that the purposes of the dam are not those that Congress has said them to be. Much time is given in the brief filed herein to a discussion of the evidence before the Congressional committees and to the report contained in House Document 541. The argument is made that in fact this dam will not be an aid to navigation or commerce. While House Document 541, in a summary of the benefits to navigation, contains the statement that present or prospective commerce on the navigable portion of Red River would not justify the cost involved in the construction of the dam, it states, "The construction of the Denison Reservoir would have a favorable effect on open-channel navigation by reducing flood stages and increasing low-water flows (Page 68)". Again on page 72 it is said, "In the event that at some future time prospective commerce should justify a navigation system, it is believed such a system would consist of

reservoirs operated in conjunction with a series of locks and dams. If this contingency should materialize the proposed Denison Reservoir, located above the navigable portion of the river, would fit into such a general scheme of improvement". House Document 541 discusses flood control, benefits to interstate commerce, and the damaging effect of floods upon interstate commerce; and, after consideration of all the facts before it, Congress enacted the particular legislation for the purposes set forth in the Act itself. It is not for courts to go behind the expressed purpose of an Act of Congress and say that it was not enacted for that purpose so long as the means provided are not unrelated to the expressed objects of the legislation. Arizona v. California, 283 U.S. 423, 51 S!Ct. 522, 75 L.Ed. 1154; Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688.

▉▉▉ The power of the United States government over waters is not limited to control of navigation. In the recent case of United States v. Appalachian Electric Power Company, decided December 16, 1940, 61 S.Ct. 291, 308, 85 L.Ed. ——, the court uses this language, "In our view, it cannot properly be said that the constitutional power of the United States over its waters is limited to control for navigation. By navigation respondent means no more than operation of boats and improvement of the waterway itself. In truth the authority of the United States is the regulation of commerce on its waters. Navigability, in the sense just stated, is but a part of this whole. *Flood protection, watershed development, recovery of the cost of improvements through utilization of power are likewise parts of commerce control.*" (Emphasis ours.) It is true that in the Appalachian case, supra, the court determined that the river was in fact navigable. It is well settled, however, that in the exercise of its control the government is not limited in its activity to that portion of a stream which is in fact navigable if the stream in general is a navigable stream, as is the Red River in its lower parts. United States v. Rio Grande Irrigation Company, 174 U.S. 690, 703, 19 S.Ct. 770, 43 L.Ed. 1136. It is also well settled that the government may construct a dam and power project on the non-navigable portion of a stream for the purposes of controlling floods in the navigable portions of the stream below the dam. United States v. Appalachian Electric Power Company, 4

Cir., 107 F.2d 769, 809; United States v. Rio Grande Irrigation Company, 174 U.S. 690, 19 S.Ct. 770, 43 L.Ed. 1136; California Oregon Power Company v. Cement Company, 295 U.S. 142, 55 S.Ct. 725, 79 L.Ed. 1356; United States v. Utah, 283 U.S. 64, 51 S.Ct. 438, 75 L.Ed. 844; United States v. Eighty Acres of Land, D.C. E.D.Ill., 26 F.Supp. 315; Appalachian Electric Power Company v. Smith, D.C.W.D.Va., 4 F. Supp. 6.

▉▉▉ For years Congress has been legislating on the subject of flood control. Flood control is one of the important methods whereby the navigability of a river is benefited and whereby the government may properly function in its regulation of interstate commerce. This principle is definitely recognized in United States v. Appalachian Electric Power Company, supra. We think unquestionably that Congress has said this dam is being constructed for the benefit of navigation and for flood control. In so far as the dam is constructed for either or both of these purposes, the defendants are proceeding under a valid Act of Congress. Congress in thus proceeding does so under its power of regulating and controlling interstate commerce. The power to promote interstate commerce is a general power and Congress may do everything that reasonably relates to that express power. It may deepen the channels of navigable streams, it may undertake flood control projects on such streams, it may build and construct highway bridges across navigable and non-navigable streams. Its power to prevent floods interfering with interstate commerce is not limited to navigable streams, and it may do anything that is reasonably necessary to prevent the interruption of interstate commerce upon navigable rivers. Flood control improves navigation and is an effective means of controlling, improving and thereby regulating interstate commerce. Having concluded that this legislation is valid under the power of Congress to regulate and control interstate commerce, it is not necessary for this court to pass upon whether or not it might be valid under any other clause of the constitution.

▉▉▉ The plaintiff makes much of its argument that the generation of electric power is in no way incidental to flood control. While it may be true that the generation of electricity is not incidental to flood control, it manifestly is true that when the government impounds waters behind a

dam for purposes of flood control, there is a vast amount of stored energy which may reasonably be converted into electrical energy. In this potential electrical energy in water impounded behind a dam built for some constitutional purpose by the United States government, the government has a proprietary interest. In the Appalachian case, supra, the court said: "Water power development from dams in navigable streams is from the public's standpoint a by-product of the general use of the rivers for commerce."

■ If the Denison Dam were being constructed upon the navigable portion of Red River, or if the Red River at the point where the dam is being constructed were navigable in fact, it might be assumed that the plaintiff would not question the right of the government to include within the project the hydroelectric feature. It is well settled that the government may build a power project in connection with regulating the navigability of streams. In the Ashwander case, supra [297 U.S. 298, 56 S.Ct. 475, 80 L.Ed. 688] the court said: "The government acquired full title to the dam site, with all riparian rights. The power of falling water was an inevitable incident of the construction of the dam. That water power came into the exclusive control of the federal government. The mechanical energy was convertible into electric energy, and the water power, the right to convert it into electric energy, and the electric energy thus produced constitute property belonging to the United States."

■ But the Red River at the point where the dam is being constructed has been determined by the Supreme Court of the United States to be non-navigable. Does this fact preclude the government from utilizing the stored energy in the water impounded for the generation of electric power? We think not. The waters to be impounded are flood waters that would pass on without utilization by the State except for the erection of the dam with funds expended by the government. Having created this energy by the expenditure of its funds, the government has a right to utilize it in liquidating the expense of maintaining the structure and in paying the cost of its construction. Since Congress is not limited to the navigable portion of a stream in building a dam for proper purposes, the inclusion of an electric or power project in connection therewith is not prohibited. No case holds that the power part of the project must be in aid of the other purposes or that the manufacture of electricity must be a mere incident to the other purposes. A proper understanding of the cases leads to the conclusion that as an incident to the construction of a dam for proper purposes the government has the power to connect therewith a project for making use of the mechanical energy in the stored waters and convert it into electrical energy as a means of liquidating the cost and expense of maintaining the project.

■ Fundamentally, what plaintiff seeks to have this court declare and determine, is that Congress enacted this legislation for one purpose but declared it to be for another purpose. This would in effect accuse Congress of using a declared purpose as a subterfuge for accomplishing an Act not within its power. This court will not assume that Congress determined to invade the sovereign rights of the State of Oklahoma and use its waters for an illegal purpose under the guise of a legal or proper purpose. This court may not inquire into the motives which induced members of Congress to enact the Denison Dam legislation. Arizona v. California, supra. Congress in passing this legislation had before it House Document 541, and, after consideration of House Document 541 and other evidence before it, reached the conclusion that the Denison Dam would serve the purpose of navigation and flood control. In reaching this conclusion, we cannot say that Congress acted arbitrarily. Since Congress was functioning in the field of its granted constitutional power, there is and can be no invasion of state sovereignty. United States v. Appalachian Electric Power Company, supra.

The motion of the defendants to dismiss is sustained. The attorneys for the defendants will prepare a decree in proper form. This matter is set for entry of such decree at Muskogee on the 8th day of February, 1941, at 10 a. m.