FOURNET, Chief Justice.
The plaintiff is appealing from a judgment dismissing, on exceptions of no cause and no right of action, his suit to have a mineral lease cancelled in so far as it affects a designated portion of the acreage covered by his lease, to have the defendant account for the minerals removed from the property after the alleged termination of the lease, and to recover damages and attorney fees.
The well pleaded facts of the petition, which we must accept as true in determining whether the petition states a cause or a right of action, are, substantially, that the plaintiff, Milton LeBlanc, on December 23, 1943, executed a lease affecting 54 acres in St. Landry Parish. This lease was for a primary term of three years, during which, in lieu of production, it could be kept in effect iby the annual payment of delay rentals of $25 an acre, and, thereafter, so long as minerals were produced in paying quantities. On April 26, 1944, the defendant, Danciger Oil & Refining 'Company, acquired the lease by assignment from Paul Blanchet, the lessee. By order of the Commissioner of Conservation dated May 18, 1945, 14.34 of the acres affected by this lease were 'integrated with an adjacent tract of 25.66 acres belonging to Alice ¡Cormier Prejqan, on which a producing well had previously been completed, to form, the 40-acre drilling unit required by the spacing order issued by the Commissioner of Conservation in January of 1945, with the result that 36.86 acres of the 54-acre tract covered by the LeBlanc lease were lying outside the unitized section. This is the portion of the acreage the plaintiff is seeking to have freed from the operation of the lease. After the termination of the primary term of the lease on December 23, 1946, the defendant, over the objection and protest of the plaintiff, drilled two producing wells on this acreage, and the plaintiff has refused to accept the royalties *468 tendered from such production. H'e did, during the primary term of the lease, accept the delay rentals tendered him.
In addition to seeking the cancellation of that portion of the lease lying outside the pooling unit, the plaintiff is claiming that as a result of this alleged illegal trespass he is entitled to recover $10,000 for his personal inconvenience, embarrassment, and disturbance; $1,200 for damage to his crops, and $5,000 attorney fees, all with legal interest; as well as an accounting of the minerals removed from these producing wells.
It is to (be observed that the plaintiff is not attacking the order of the Commissioner in so far as it affects the 14.34 acres pooled with the Prejean property to form the 40-acre drilling unit; in fact, his counsel conceded in argument that the plaintiff 'had acquiesced in the order to this extent by accepting his pro-rata share of the payments made under such order. The attack is levelled at the order only in so far as it purports to affect the property lying outside this unit, the plaintiff’s contention being (1) that the order was never intended to affect this portion of the lease or to vary the contract between the parties with respect thereto; in the alternative, (2) that if it-was so intended, the issuance of such an order was unauthorized; further in the alternative, (3) that if the order was issued under the guise of legal authority such authority is unconstitutional since it impairs the obligation of his contract for no purpose of public utility, in contravention of Section 15 of Article IV of the Constitution of Louisiana and of Section 10 of Article I of the Constitution of the United States, and also deprives him of his property without due process of law, in contravention of Section 2 of Article I of the Constitution of Louisiana and of the Fourteenth Amendment to the Constitution of the United States; finally, still in the alternative, (4) that the company has failed to properly develop the lease.
The plaintiff’s case is based upon the erroneous -assumption and conclusion that the order of the Commissioner of Conservation was intended to affect the property lying outside the unit and to vary the contract between the parties with respe-ct thereto. The lawmakers in adopting Act No. 157 of 1940 as a conservation measure never intended that the orders of the Commissioner of Conservation creating pooling units pursuant thereto should ever have any effect beyond the limits of such units, and the Commissioner, in issuing Order No. 93-1 on May 18, 1945, creating the 40-acre pooling unit involved in this case not only never intended that it should, but hé has not, in fact, endeavored to exercise any jurisdiction beyond the limits of this unitized area. The authorities relied on by the plaintiff are, therefore, inapposite.
 The holding of this court in the recent case of Hunter Company v. Shell Oil Company, Inc, 211 La. 893, 31 So.2d 10, 13, where a factual situation similar to that *470 in the case under consideration existed— which holding was to the effect that production in paying quantities during the primary term of a mineral lease on a portion of an integrated pooling unit established by the Commissioner of Conservation, although not on the leased property, maintains the lease in effect beyond the primary term as to that part of the leased land lying outside the unit — was not based on the action taken by the Commissioner in creating that unit or on any intention that might have flowed therefrom, but, instead, on the basic proposition well established in our jurisprudence that the lessee’s obligation to drill a well is indivisible in its nature and the lessor’s corresponding obligation to deliver the land is also indivisible, with the result that if the obligation of one is fulfilled in its entirety, then the obligation of the other is also fulfilled in its entirety.
In the Hunter case counsel for the plaintiff contended the orders issued by the Commissioner of Conservation had the effect of segregating the portion of the lease lying within the pooling unit from that lying outside, and, in disposing of that issue, this court said: “It is true that the orders of the Commissioner divided the lease in the sense that a part of the property described in the lease was placed within the unit (Section 5) and the remainder of the property formed no part of this unit. But the question here presented is whether under the orders the Commissioner divided the obligation of the lease. In our opinion these orders by their provisions clearly did not divide the obligation of the lease.”
Moreover, counsel for the plaintiff overlook the fact that all contracts of lease with respect to the development and production of minerals in this state must, of necessity, be subject to the police power exercised in protecting these natural resources, and that any provisions in our law with respect thereto form a part of these lease contracts the same as though written therein, a fact of which the parties to the original lease themselves took full cognizance when they included a provision in the lease subjecting it to state and federal laws regulating the production and operation on the land. Had they intended any action in pursuance to such provisions segregating and placing only a portion of the leased property in a pooling unit to have the effect of dividing the lease, they could have so stipulated in their contract.
The allegations of plaintiff’s petition setting forth the claim that he is entitled to a cancellation of the lease because of the'nondevelopment thereof, in the absence of any pleaded facts from which such a conclusion can be drawn and particularly when considered 'in the light of his allegations that two producing wells have been drilled on the property, since the termination of the primary term of the lease, states no cause of action; and since petitioner fails to allege he placed the lessee in de *472 fault in this respect, his petition states no right of action.
While there is a stipulation in the lease that the lessee and his assignees are answerable for any damage to growing crops occasioned by their operations on this tract, and there is an allegation in the petition to the effect the plaintiff is entitled to recover $1,200 for crop damage, this is not a well pleaded fact that must be considered as true in disposing of these exceptions, being nothing more than a conclusion of the pleader ibased upon no alleged facts. The plaintiff’s claim in this respect must, therefore, be dismissed as of non-suit.
r [7] Inasmuch as the claim for attorney fees was contingent upon the plaintiff’s success in securing the cancellation of the portion of the lease lying outside the pooling unit, this claim must fall with the main demand.
For the reasons assigned, the judgment appealed from is affirmed, with the exception of plaintiff’s claim for $1,200 for crop loss and damage, which claim is non-suited.
HAMITER, J., dissents and assigns written reasons.