**SCOTT et al. v. PURE OIL CO. et al.**

No. 13365.

United States Court of Appeals
Fifth Circuit.

Feb. 8, 1952.

J. N. Saye, Longview, Tex., for appellants.

Lon Sailers, Dallas, Tex., H. C. Walker, Jr., Shreveport, La., C. E. Bryson, Houston, Tex., George K. Gilbert, Shreveport, La., Ben H. Rice, III, Houston, Tex., for appellees.

Before HUTCHESON, Chief Judge, and RUSSELL and RIVES, Circuit Judges.

RUSSELL, Circuit Judge.

In this case the trial Court denied the appellants' prayer for judgment declaring that the terms of an oil and gas lease originally granting 317.93 acres had, to the extent of a specified 177.93 acres, expired by its terms. Appellants' action was predicated upon the contention that the provisions of the original lease, as amended, did not support the defendants-appellees' claim that production from a well located upon a unitized area covering acreage including a portion of the 317.93 acre tract, but not upon the 140 acres granted by the original lease which was properly included in the unit, was such production as perpetuated the lease as to the 177.93 acres not included within the unitization agreement. Neither appellants nor appellees were original parties to the lease but are grantees and assignees of the respective interests which they now claim. All the material facts involved in this controversy are stipulated by the parties.

When the appellants each acquired an undivided ⅛th interest in and to the oil, gas

and other minerals in and under the 317.93 acres on June 22, 1944, the land was burdened with a gas and oil lease, dated May 8, 1936, of which The Pure Oil Company was assignee. The term of the lease was ten years from its date and as long thereafter as oil or gas was produced from the land by the lessee. This lease did not grant the right to pool or unitize the land covered by it with other lands for the production of gas and oil, but on May 23, 1945, an amendment to the lease was executed by appellants, granting the right to pool or combine the acreage covered by the lease, or any portion thereof, as to gas, to the extent provided in the amendment. This agreement provided that the original lease was amended by including specified sections "in addition to the terms and provisions contained in such lease as now written." Among other matters the amendment stipulated: "Lessee shall execute in writing an instrument identifying and describing the pooled acreage. The entire acreage so pooled into a tract or unit shall be treated for all purposes except for the payment of royalties as if it were included in this lease, and drilling or reworking operations thereon and production of gas, from any stratum or strata so pooled shall be considered for all purposes (except the payment of royalties) as if such operation were on and such production were from the land covered by this lease, whether or not the wells be located on the premises covered by this lease."

The parties also agreed that nothing contained in the amendment should be construed as altering, amending or affecting the original lease or any of its terms or provisions "except as same is hereby expressly amended," and except where inconsistencies or conflict of provisions should appear.

Under the amended lease appellee The Pure Oil Company and Mid-Continent Petroleum Corporation entered into an agreement pooling certain lands into a single drilling unit for the production of gas. This unit, known as the Mid-Continent-Priestley-Holmes Unit, consisted of 675.24 acres, which acreage included 140 acres of land described in the lease involved in this litigation. A producing well was completed on this unit on October 26, 1945, but the well was not located on the 140 acres. On October 12, 1945, appellants signed an instrument ratifying the original lease, as amended.

The remaining 177.93 acres covered by the lease were included in a unit formed by The Pure Oil Company, Stanolind Oil and Gas Company, and Arkansas-Louisiana Gas Company on November 5, 1947, known as the Stanolind Oil and Gas Company—Rogers Unit, and consisting of a total of 659.37 acres. In August, 1948, a producing well was completed on this unit, but the well was not located on the 177.93 acres covered by the lease in question.

Appellants urge that the trial Court erred in declaring and adjudging that the amended lease did not expire on May 8, 1946, at the expiration of the primary term thereof, insofar as the 177.93 acres included in the unit formed by appellees on November 5, 1947, are concerned, and in declaring the agreement under which that unit was formed to be valid and binding upon them. It is admitted that the lease is valid and subsisting insofar as it covers the 140 acres included in the Mid-Continent-Priestley-Holmes Unit.

The sole point at issue involves the effect of the provisions of the amendment of May 23, 1945. Appellants contend that the amendment authorized the pooling of the acreage covered by the lease, or any portion thereof, with other acreage and if gas should be produced on a pooled unit, whether on the acreage covered by the lease or not, it would be considered as though it were produced on the leased property *so pooled* and the lease on that portion of the acreage would be extended so long as gas was being produced in paying quantities. Thus, that since 140 acres covered by the lease were pooled and gas was produced from the unit of which it was made a part, the amended lease is valid and subsisting as to that acreage. However, under appellants' theory, since the remaining 177.93 acres were not included in any unit prior to the alleged expiration of the amended lease,

and no oil or gas was being produced from that acreage on the crucial date, the lease expired, insofar as the 177.93 acres are concerned, at the expiration of the primary term of the lease.

The original lease provided that its term would continue so long as gas or oil be produced from "said land." It is elementary that if gas or oil had been produced on any portion of the land covered by this lease during the primary term thereof, for so long as such gas or oil was being produced in profitable quantities the lease on the entire acreage would have been perpetuated. The amendment did not limit this provision, but enlarged it by providing that if gas were produced from any acreage with which "any portion" of the land covered by the lease should be unitized such production would be considered for all purposes, except the payment of royalties, "as if such operations were on and such production were from the land covered by this lease, whether or not the well or wells be located on the premises covered by this lease." The "land covered" by the lease was the entire 317.93 acre tract, "any portion" of which it was agreed might be unitized. To the same effect is the language of the agreement ratifying and adopting the original lease, as amended. To construe this language to mean that only that portion of the acreage actually pooled or unitized would be affected by the production of gas from the unit would be to disregard the phrase "for all purposes" which is contained in the provision, and would effect a reformation of the contract to include an exception which was not placed in the agreement by the parties, and which is not implied by the language used, and, moreover, one which is repugnant to the existing contract. Under the provisions of the agreement here considered it is clear· that production on the unitized tract fulfilled the requirement for production in the original lease and that its terms were perpetuated upon the entire acreage therein described.

Our investigation confirms the statement of counsel for both parties that there are no reported cases of the Texas Courts in which the issue here presented is considered. The Supreme Court of Louisiana,[1] and the Supreme Court of Arkansas,[2] have adjudged under somewhat similar provisions, as we do, that where a portion of the whole leased acreage is rightfully unitized production in paying quantities during the primary term of a gas and oil lease, although not from a well on such leased property, maintains the lease in effect as to that part of the leased land which is not included in the unit. The cases of Gray v. Cameron; Hunter Co. v. Shell Oil Co., and LeBlanc v. Danciger Oil & Refining Co., supra, differ in facts from the instant case in that the unitization took place in accordance with orders of the local conservation commission. However, each of these cases, as well as Jackson v. Hunt Oil Co., supra, give effect to the proposition that where the authority for the unitization so provides, the production in paying quantities from the well or wells on the area unitized may be imputed as the required production from each of such component tracts so as to continue such individual leases in force as to their entire acreage— that both within and without the unitized area.

The production of gas on the Mid-Continent-Priestley-Holmes Unit, in accordance with the provisions of the amended lease, effected the perpetuation of the original lease in its entirety and the trial Court correctly so held.

Appellants originally filed a motion to tax the costs of printing unnecessary record against the appellees. There is no reference to this motion in the brief, as appellants stated in their motion they would so present it, and we treat the motion as abandoned. Costs of appeal are assessed against the appellants.

Judgment affirmed.

1. Jackson v. Hunt Oil Co., 208 La. 156, 23 So.2d 31, Hunter Co. v. Shell Oil Co., 211 La. 893, 31 So.2d 10; LeBlanc v. Danciger Oil & Refining Co., 218 La. 463, 49 So.2d 855.

2. Gray v. Cameron, 218 Ark. 142, 234 S. W.2d 769.