### SMITH v. CARTER OIL CO. et al.
### Civ. A. No. 2934.

United States District Court
W. D. Louisiana, Shreveport Division.
April 10, 1952.

Tooke & Tooke, Shreveport, La., for plaintiff.

Blanchard, Goldstein, Walker & O'Quin, Shreveport, La., for defendant.

PORTERIE, District Judge.

In this suit the plaintiff seeks cancellation of an oil, gas and mineral lease affecting lands in Bienville parish, Louisiana, insofar only as such lease affects a segregated portion of the land originally subject to such lease, and also prays for damages and attorney's fees for the refusal of the lessee to execute a release of the lease as to such portion of the lands within ten days after the plaintiff's demand therefor. Jurisdiction is based upon diversity of citizenship and the allegation that the amount involved exceeds three thousand dollars, neither of which has been questioned nor is at issue. The original defendant, The Carter Oil Company, filed a motion to dismiss for failure to state a claim upon which relief can be granted, and also a motion to strike the plaintiff's demand for trial by jury. The former was sustained and an order of dismissal entered, but leave granted to the plaintiff to amend. A further supplemental complaint was then filed making Hope Producing Company a party defendant, and it was met with a further motion to dismiss for failure to state a claim upon which relief can be granted. This motion is the issue now before the Court.

We add later detailed and itemized Findings of Fact and Conclusions of Law, but the central issues can be more briefly expressed and more easily understood in narrative form.

Upon a motion to dismiss for failure to state a claim upon which relief can be granted, the well pleaded facts alleged in the complaint are considered admitted, but the motion does not admit conclusions of law or inferences or conclusions of fact not supported by allegations of specific facts; and no evidence is admissible. Huntley v. Gunn Furniture Co., D.C., 79 F.Supp. 110; Flanigan v. Security-First National Bank, D.C., 41 F.Supp. 77; State of Oklahoma ex rel. Phillips v. Guy F. Atkinson Co., D.C., 37 F.Supp. 93, affirmed on other points, 313 U.S. 508, 61 S.Ct. 1050, 85 L.Ed. 1487; 2 Moore's Federal Practice (2d Ed.) 2244, par. 12.08. The facts stated in this opinion are taken from the plaintiff's complaint and two supplemental complaints and the exhibits attached thereto, in accordance with the foregoing rule.

On March 28, 1947, the plaintiff executed in favor of G. G. Nesbitt, Jr., an oil, gas and mineral lease upon a fairly common printed form, covering a contiguous tract of 428 acres of land.

On April 23, 1947, the original lessee assigned the lease in its entirety to the defendant, The Carter Oil Company; and, on October 27, 1947, the latter assigned to the defendant, Hope Producing Company, the "natural gas rights" in the lease in its entirety, reserving a small overriding royalty interest.

On March 25, 1948, after due notice and hearing, the Commissioner of Conservation of the state of Louisiana issued Order No. 99–13, pooling and unitizing a portion of this land with adjoining land to form a unit of 594.565 acres for production from the Davis Zone of the Ada Field, this order providing that " * * * drilling operations, drilling and production on any of the tracts included within said unit shall constitute drilling operations, drilling, and production under the terms of each and every one of said lease and sublease contracts affecting the property within said unit."

On March 2, 1949, after due notice and hearing, the Commissioner of Conservation issued Orders Nos. 99–14 and 99–D–2, the former pooling the same quarter section of plaintiff's land affected by the 1948 Order to form a new unit of approximately 640 acres for production from the Davis sand, and the latter pooling approximately 80 additional acres subject to the lease with other lands to establish a unit of similar size for production from the Pettit Zone. Each of these pooling orders provided that "[p]roduction on any one of the tracts included within the drilling unit shall constitute production under the terms of each and every one of said lease or sublease contracts affecting the property included within the drilling unit."

Producing wells were drilled upon these units, but none of the unit wells was located

upon the land subject to the lease. All of these orders were secured upon application of Hope Producing Company, which was designated the Operator; and royalties have been paid upon the basis provided in the Orders of the Commissioner. It is alleged that "The Carter Oil Company was officially represented, took part in, presented evidence in the course of, then acquiesced in the proceedings before the Commissioner of Conservation looking to and seeking the entry of the respective Orders hereinabove referred to and the promulgation thereof for the profit, benefit and advantage of The Carter Oil Company."

Plaintiff seeks cancellation of the lease as to the 188 acres remaining outside the units described, alleging that the "delay rental" of $188.00 tendered in 1949 was not timely and was refused, and that the lease could be maintained as to the then nonproductive acreage only by timely payment or tender of rental upon that portion of the land.

■ Under Louisiana law an oil and gas lease is an indivisible obligation; Darphin v. Continental Oil Co., D.C., 22 F.Supp. 274; Murray v. Barnhart, 117 La. 1023, 42 So. 489; Cochran v. Gulf Refining Co. of Louisiana, 139 La. 1010, 72 So. 718; Nabors v. Producers' Oil Co., 140 La. 985, 74 So. 527, L.R.A.1917D, 1115; Hunter Co., Inc., v. Shell Oil Co., Inc., 211 La. 893, 31 So.2d 10; LeBlanc v. Danciger Oil & Refining Co., 218 La. 463, 49 So.2d 855; and the lessor has "no right to demand that the lease be forfeited and canceled as to only a part of the land and left in force as to another part of it." Smith v. Sun Oil Co., 165 La. 907, 922, 116 So. 379, 384.

■ Issuance of a pooling order by the Commissioner of Conservation of the state of Louisiana does not constitute a "division" of the indivisible obligation of the lease, and the lessor may not sue to cancel the portion of the leased premises lying outside the unit. Hunter Co., Inc. v. Shell Oil Co., Inc., supra; LeBlanc v. Danciger Oil & Refining Co., supra. Cf. Scott v. Pure Oil Company, 5 Cir., 194 F.2d 393. The plaintiff contends, however, that these decisions are not controlling because there has been an exercise of paragraph 6 of the lease contract with consequences specified in that paragraph.

Excerpts from this paragraph are likely to be misleading when taken out of context, so we quote it in full:

"If at any time while this lease is in force and effect lessee in its opinion deems it advisable and expedient, in order to form a drilling unit or units to conform to regular or special spacing rules issued by the Commissioner of Conservation of the State of Louisiana, or by any other State or Federal authority having control of such matters, or in order to conform to conditions imposed upon the issuance of drilling permits, *lessee shall have the right, at its option*, to pool or combine the lands covered by this lease, or any portion or part thereof, with other land, lease or leases in the immediate vicinity thereof, whether such land, lease or leases are held by lessee or by others, such pooling to be into a unit or units not exceeding the number of acres, or the land subdivision, whichever may be the larger, allocated to one well by the above mentioned authority or authorities, and to be applicable only to such sands, horizons or strata as are covered by such regulations. *Lessee shall execute in writing and record in the conveyance records of the parish in which the land herein leased is situated an instrument identifying and describing the pooled acreage, and shall mail to the named lessor herein at his last known post office address, by registered mail, a certified copy of such instrument.* As between the parties hereto and except as herein otherwise specifically provided, the entire acreage so pooled into a tract or unit shall be treated for all purposes as if it were included in this lease. In lieu of the royalties elsewhere herein specified, lessor shall receive, on the production from the unit so pooled, only such proportion of the royalties stipulated herein as the amount of his acreage (mineral rights) placed in the unit bears to the total acreage so pooled in the particular unit involved. Drilling opera-

tions on or production of oil, gas, sulphur or other minerals from any portion of the land covered hereby shall continue this lease in force and effect during or after the primary term as to all of the lands covered hereby, irrespective of whether any portion thereof has been pooled. If operations be conducted on or production be secured from land in such pooled unit other than land covered by this lease, it shall have the same effect as to maintaining lessee's rights in force hereunder as if such operations were on or such production from land covered hereby, except that its effect shall be limited to the land covered hereby which is included in such pooled unit. This lease, during any period in which it is being so maintained as to part of the land covered hereby, may be maintained as to the remainder in any manner elsewhere provided for herein; provided, that if it be maintained by rental payment, the rentals may be reduced in proportion to the number of acres in such unit or units as to which this lease is being maintained by drilling operations or production." (Emphasis ours.)

The question is not whether the lessee *could* have "divided" the lease, but whether the lessee *did* the act which the lease specifies should result in division. Practically every modern oil and gas lease has several provisions under which the lessee, at its option, may "divide" the lease; perhaps the oldest and most common is the provision that the lease may be assigned in whole or in part, and in the event of assignment as to a segregated portion of the land, default by one leasehold owner will not affect the rights of any other.

A clause of this type was involved in Smith v. Sun Oil Company, supra, in which the lessee had made an assignment of the lease as to segregated acreage with reservation of an overriding royalty interest. It was urged that this was an assignment, and that the lease therefore was divided. In reply the Louisiana Supreme Court said the following:

"The paragraph which we have quoted gave the original lessee the right to divide the lease into two or more leases, by assigning the lease on any part or parts of the 200 acres of land; and, if the assignment to Elliott was in fact and in law an assignment only, and not a sublease, the production of oil by Autrey, on the 20 acres of land, and the payment of royalties thereon, did not keep the original lease in force on the 180 acres retained under lease by the Sun Oil Company. Our opinion, however, is that the so-called assignment made by the Sun Company to Elliott was in fact and in law a sublease, and not merely an assignment, and, therefore, that the operations carried on by Autrey on the 20 acres subleased to Elliott inured to the benefit of the sublessor, and kept the lease in force on the whole 200 acres of land." 165 La. 907, 911, 116 So. 379, 380.

So, the question now before us is whether the lessees exercised their option by the doing of the acts specified in paragraph 6 of the lease. This paragraph specifically provides the manner in which it is to be made operative: The lessee must execute in writing and record in the conveyance records of the parish in which the land is situated an instrument identifying and describing the pooled acreage, and must mail a certified copy of this pooling designation by registered mail to the named lessor at his last known post office address.

It is neither alleged nor contended that the lessees executed such an instrument, much less that it was recorded as required and notified in the manner specified. The plaintiff's argument is that the pooling orders of the Commissioner, secured upon application of one of the defendants with the cooperation of the other, and "acquiesced in" by both, constituted an exercise of the option of paragraph 6.

We think not. If there was basis at all for the issuance of these orders (as we must conclusively assume), it was the duty of Hope Producing Company as driller of the well to apply for the hearings in order that the owner of each tract within the unit might be afforded the opportunity to recover

or receive his just and equitable share of the oil and gas in the pool. Under a pooling resulting from a pooling designation under paragraph 6, royalties are to be distributed between the various parties in interest in the unit upon a straight acreage basis. To protect the correlative rights, the Commissioner might well order distribution of royalties upon a "recoverables in place" basis, as is becoming increasingly common. It would be strange indeed to find that a contractual provision specifying one result could be invoked by regulatory order specifying a different result.

It is true that the orders involved here also directed distribution of production upon a straight acreage basis, but each of them specifically provided that production from any part of the unit should constitute production under the terms of each of the lease contracts affected. A substantially identical provision in Order No. 34–D–11 was involved in Everett v. Phillips Petroleum Company, 218 La. 835, 51 So.2d 87, 92. After quoting the clause, the Louisiana Supreme Court observed, as follows:

"The foregoing quoted provision of the order is a restatement of the language of Section 9(a) of Act No. 157 of 1940 under which the unitization by the Conservation Commissioner is authorized. Therefore, by virtue of the law and the order of the Commissioner, the drilling of the Fitzsimmons well constituted a drilling of the canal strip. * * *

" * * * [W]e think that the drilling which occurred on the unit was more than a mere fiction. It was an actual extraction of the minerals under plaintiffs' land based upon geophysical and scientific findings—for, under the Commissioner's ruling, the Fitzsimmons well is capable of draining successfully all of the oil within the 7,700 foot sand from under plaintiffs' land. Hence, what difference, then, that the well does not stand upon plaintiffs' property?"

Under these orders, then, there was production from a portion of the land covered by the lease, which under the terms of paragraph 6 itself would continue the lease in force and effect as to all of the land covered by the lease.

We conclude that paragraph 6 can be brought into operation only in the manner specified; but this has not been done; the lease, therefore, remains a single indivisible obligation, and the plaintiff cannot sue to cancel it as to a part of the land while leaving it in effect as to the remainder.

Further, every oil and gas lease affecting lands within the state of Louisiana is subject to the laws of that state with respect to the conservation of these natural resources; the provisions of these laws are implied in each such contract, a fact which the parties to the present lease recognized by inserting a specific provision that all terms and covenants thereof should be subject to federal and state laws, orders, rules, and regulations. LeBlanc v. Danciger Oil & Refining Company, supra. The validity of these orders has not been questioned. Indeed, they are prima facie valid and can not be attacked in a proceeding of this nature. LSA–R.S. 30:12, Louisiana Revised Statutes of 1950; O'Meara v. Union Oil Company of California, 212 La. 745, 33 So.2d 506; Everett v. Phillips Petroleum Company, supra. As pointed out in the above quotation from the Everett decision, the effect of these orders was that the drilling of the unit wells constituted a drilling of the property subject to the lease, and production from the unit wells was production from the plaintiff's land.

" * * * [W]here private contractual rights are in conflict with the valid orders of the Commissioner of Conservation, the former must yield and are superseded by the latter. Hood v. Southern Production Co., 206 La. 642, 19 So.2d 336; Placid Oil Co. v. North Central Texas Oil Co., 206 La. 693, 19 So.2d 616; Hardy v. Union Producing Co., 207 La. [137] 138, 20 So.2d 734; Alston v. Southern Production Co., 207 La. 370, 21 So.2d 383; Hunter Co. v. Shell Oil Co., 211 La. 893, 31 So.2d 10; Hunter Co. v. Vaughn, 217 La. 459, 46 So.2d 735 and LeBlanc v. Danciger Oil & Ref.

Co. [218 La. 463], 49 So.2d 855, handed down on November 6th 1950 and not yet reported." Everett v. Phillips Petroleum Co., 218 La. 835, 847, 51 So.2d 87, 91–92.

▮ The plaintiff complains that the sum of $188.00 as "delay rental" was tendered to him in 1949 after the anniversary date of the lease, and that he refused such payment as well as $148.00 each tendered during the years 1950 and 1951. The latter two payments clearly were unnecessary, in any eventuality, because of the pendency of this suit. Leonard v. Busch-Everett Co., 139 La. 1099, 72 So. 749. In view of our conclusion, the 1949 tender was also unnecessary, since the lease was maintained by production, and it is immaterial whether the tender was made through error, as a precaution, or simply as a gift. The plaintiff suffered no loss by reason thereof and has no standing to complain.

The facts stated in the complaint, the first supplemental complaint and the lease and assignment attached thereto, and the second supplemental complaint and the assignment, division orders, and pooling orders attached thereto, insofar as such facts are relevant to the issue before the Court, are as follows:

(1) The plaintiff is the owner of a contiguous tract of 188 acres in Bienville parish, Louisiana, described as follows:

Twenty-five acres on the south side of the SE¼ of SE¼, section 30; three acres described as a strip of land thirty-five yards wide by four hundred and forty yards long on the west side of the NW¼ of NW¼, section 32; W½ of NE¼; NE¼ of NE¼; and NW¼ of SE¼, section 31; all in T. 18 N., R. 7 W., Bienville parish, Louisiana.

(2) On March 28, 1947, the plaintiff executed in favor of G. G. Nesbitt, Jr., an oil, gas and mineral lease (a copy of which is attached to the original complaint and which is hereafter called "the lease"), covering this 188 acres and also 240 acres adjacent thereto, the entire 428 acres being described in the lease as follows:

"The South twenty-five (25) acres of the Southeast Quarter of Southeast Quarter (SE¼ of SE¼) Section 30;

"All the Southwest Quarter (SW ¼); East half of Northwest Quarter (E½ of NW¼); West half of Northeast Quarter (W½ of NE¼); Northeast Quarter of Northeast Quarter (NE¼ of NE¼), and Northwest Quarter of Southeast Quarter (NW¼ of SE¼), Section 31;

"Also 3 acres described as a strip of land 35 yards wide and 440 yards long on the West side of Northwest Quarter of Northwest Quarter (NW¼ of NW¼) Section 32;

"All being in Township 18 North, Range 7 West, Bienville Parish, La., and containing 428 acres, more or less."

(3) Paragraph 4 of the lease reads as follows:

"If operations for drilling are not commenced on said land on or before one year from this date, the lease shall then terminate as to both parties unless on or before such anniversary date lessee shall pay or tender to lessor or to the credit of lessor in Minden Bank & Trust Co., bank at Minden, La. (which bank and its successors are lessor's agent and shall continue as the depository for all rentals payable hereunder regardless of changes in ownership of said land or the rentals) the sum of Four Hundred Twenty Eight & No/100 Dollars ($428.00), (herein called rental) which shall cover the privilege of deferring commencement of drilling operations for a period of twelve (12) months. In like manner and upon like payments or tenders annually the commencement of drilling operations may be further deferred for successive periods of twelve (12) months each during the primary term. The payment or tender of rental may be made by the check or draft of lessee mailed or delivered to lessor or to said bank on or before such date of payment. If such bank (or any successor bank), should fail, liquidate or be succeeded by another bank, or for any reason fail or refuse to accept rental, lessee shall not be held in default for failure to make such payment or tender of rental until thirty (30) days after

lessor shall deliver to lessee a proper recordable instrument, naming another bank as agent to receive such payments or tenders. The down cash payment is consideration for this lease according to its terms and shall not be allocated as mere rental for a period. Lessee, or any assignee hereunder, may at any time execute and deliver to lessor, or to the depository above named, or place of record, a release or releases covering any portion or portions of the premises held by him, and thereby surrender this lease as to such portion or portions, and thereafter the rentals payable by him shall be reduced proportionately."

(4) Paragraph 6 of the lease reads as heretofore quoted.

(5) Paragraph 8 of the lease permits assignment in whole or in part, and stipulates that:

"In event of assignment of this lease as to a segregated portion of said land, the rentals payable hereunder shall be apportionable as between the several leasehold owners ratably according to the surface area of each, and default in rental payment by one shall not affect the rights of other leasehold owners hereunder."

(6) Paragraph 11 of the lease provides:

"All terms and express or implied covenants of this lease shall be subject to all Federal and State Laws, Executive Orders, Rules or Regulations, and this lease shall not be terminated in whole or in part, nor Lessee held liable in damages, for failure to comply therewith, if compliance is prevented by, or if such failure is the result of any such Law, Order, Rule or Regulation."

(7) On April 23, 1947, the original lessee assigned the lease in its entirety to the defendant The Carter Oil Company without any reservation whatsoever; a copy of such act of assignment being attached to the first supplemental complaint herein.

(8) On October 27, 1947, the defendant The Carter Oil Company assigned to the defendant Hope Producing Company the "natural gas rights" in the lease in its en-

tirety, reserving a small overriding royalty interest.

(9) On March 25, 1948, after due notice and hearing, the Commissioner of Conservation of the state of Louisiana under Order No. 99–13 pooled and unitized a unit of 594.565 acres of land for production from the Davis Zone of the Ada Field, this unit including the SW¼ of section 31, T. 18 N., R. 7 W., owned by plaintiff. The order provides that " * * * drilling operations, drilling, and production on any of the tracts included within said unit shall constitute drilling operations, drilling, and production under the terms of each and every one of said lease and sublease contracts affecting the property included within said unit."

(10) On March 2, 1949, after due notice and hearing, the Commissioner of Conservation issued Orders Nos. 99–14 and 99–D–2, respectively pooling the SW¼ of section 31, T. 18 N., R. 7 W., owned by plaintiff, with other lands to establish a drilling unit of approximately 640 acres for production from the Davis sand, and pooling the E½ of NW¼ of Sec. 31, T. 18 N., R. 7 W., owned by the plaintiff, with other lands to establish a unit of similar size for production from the Pettit Zone of the Ada Field. Each of these pooling orders provided that "[p]roduction on any one of the tracts included within the drilling unit shall constitute production under the terms of each and every one of said lease or sublease contracts affecting the property included within the drilling unit."

(11) All three of these orders were granted upon application of Hope Producing Company, which was designated Operator under each, and "The Carter Oil Company was officially represented, took part in, presented evidence in the course of, then acquiesced in the proceedings before the Commissioner of Conservation looking to and seeking the entry of the respective Orders hereinabove referred to and the promulgation thereof for the profit, benefit and advantage of The Carter Oil Company." Art. VIII, second supplemental complaint.

(12) Actual production has been secured upon the units so established, although none:

of the wells is located upon lands subject to the lease, and Hope Producing Company has operated in accordance with such orders and has paid royalties in accordance therewith, and division orders upon this basis were issued with the consent of and accepted by both defendants.

(13) In the year 1949, but subsequent to the due date thereof, The Carter Oil Company attempted to pay and tender to the plaintiff the sum of $188 as "delay rental" on that portion of the lease not previously unitized into producing units by order of the Conservation Commissioner; and in the years 1950 and 1951, prior to the anniversary date of the lease, The Carter Oil Company attempted to pay to the plaintiff the sum of $148.00 each as "delay rentals" on that portion of the lease not then unitized. The reduction in amount apparently is attributable to establishment of the J. W. Baker Unit, including the NW¼ of SE¼ of section 31, T. 18 N., R. 7 W., since a division order covering this property effective as of October 20, 1949, is attached to the second supplemental complaint. Unitization of this unit is not specifically alleged, but we consider this immaterial.

(14) There is no allegation that the lessee or its assignor has at any time executed a partial release of any segregated portion of the 428 acres leased.

(15) There is no allegation that the lessee or its assignor has at any time exercised its option to pool or combine any portion of the 428 acres with other lands, by the filing of a pooling declaration in accordance with paragraph 6 of such lease, except as may result from the issuance of the pooling orders described above.

(16) There is no allegation that the defendants or their assignor have assigned this lease insofar as it affects any segregated portion of the 428 acres originally subject to the lease.

(17) The plaintiff prays that such oil, gas and mineral lease be cancelled insofar as it covers and affects the land described in Finding of Fact (1) hereinabove, for $18,800 as damages for failure of the original defendant to execute a release, and for $5,000 as attorney's fees.

## Conclusions of Law

(1) Upon a motion to dismiss for failure to state a claim upon which relief may be granted, the well-pleaded facts alleged in the complaint are considered admitted, but the motion does not admit conclusions of law or inferences or conclusions of fact not supported by allegations of specific facts; and no evidence is admissible. Huntley v. Gunn Furniture Co., D.C., 79 F.Supp. 110; Flanigan v. Security-First National Bank, D.C., 41 F.Supp. 77; State of Oklahoma ex rel. Phillips v. Guy F. Atkinson Co., D.C., 37 F.Supp. 93; 2 Moore's Federal Practice (2d Ed.) 2244, par. 12.08.

(2) Under Louisiana law an oil and gas lease is an indivisible obligation. Darphin v. Continental Oil Co., D.C., 22 F.Supp. 274; Murray v. Barnhart, 117 La. 1023, 42 So. 489; Cochran v. Gulf Refining Co. of Louisiana, 139 La. 1010, 72 So. 718; Nabors v. Producers' Oil Co., 140 La. 985, 74 So. 527, L.R.A.1917D, 1115; Hunter Co., Inc., v. Shell Oil Co., Inc., 211 La. 893, 31 So.2d 10; LeBlanc v. Danciger Oil & Refining Co., 218 La. 463, 49 So.2d 855. The lessor has "no right to demand that the lease be forfeited and canceled as to only a part of the land and left in force as to another part of it." Smith v. Sun Oil Co., 165 La. 907, 922, 116 So. 379, 384.

(3) Although the lease may grant the lessee the right to divide the lease into two or more leases, affecting segregated portions of the original leased premises, upon the doing of an act solely within the power and option of the lessee pursuant to provisions of the lease, such provision does not render the lease divisible unless and until the contemplated act is done by the lessee. Smith v. Sun Oil Co., supra. The lessee here did not execute and record a pooling designation and notify the lessor by a certified copy thereof through registered mail, as required by Paragraph 6 if the lessee is to exercise its option thereunder.

(4) Issuance of a pooling order by the Commissioner of Conservation of the state of Louisiana does not constitute a "division" of the indivisible obligation of the lease, and the lessor may not sue to cancel the portion of the leased premises lying out-

side the unit. Hunter Co., Inc. v. Shell Oil Co., Inc., supra; LeBlanc v. Danciger Oil & Refining Co., supra; Cf. Scott v. Pure Oil Company, 5 Cir., 1952, 194 F.2d 393.

(5) Each of the pooling orders in question specifically provided that production from any part of the unit should constitute production under the terms of each of the lease contracts affected. The validity of these orders has not been questioned; they are prima facie valid and can not be attacked in a proceeding of this nature. LSA–R.S. 30:12, Louisiana Revised Statutes of 1950; O'Meara v. Union Oil Company of California, 212 La. 745, 33 So.2d 506; Everett v. Phillips Petroleum Company, 218 La. 835, 51 So.2d 87.

(6) Private contractual rights in conflict with valid orders of the Commissioner of Conservation must yield to and are superseded by the latter. Everett v. Phillips Petroleum Company, supra.

(7) Every oil and gas lease affecting lands within the state of Louisiana is subject to the laws of that state with respect to the conservation of these natural resources. The provisions of those laws are implied in each such contract. The parties to the present lease recognized this by inserting a specific provision that all terms and covenants thereof should be subject to governmental laws, orders, rules, and regulations. LeBlanc v. Danciger Oil & Refining Co., supra. If there was basis at all for the issuance of these orders (as we must conclusively so assume), it was the duty of Hope Producing Company to apply for the hearings in order that the owner of each tract within the unit might be afforded the opportunity to recover or receive his just and equitable share of the oil and gas in the pool. Neither defendant had any alternative except to "acquiesce" in the orders when issued.

(8) The plaintiff cannot complain that he was paid or tendered a sum not due. Accepting Art. XI of the second supplemental complaint as intended to amend and correct the opposite allegation of Art. VII of the original complaint, the plaintiff has not shown that he suffered any injury by reason of the defendant's error or gift in making the tenders.

(9) A complaint may be dismissed on motion for failure to allege facts sufficient to make a valid claim for relief; DeLoach v. Crowley's Inc., 5 Cir., 128 F.2d 378; 2 Moore's Federal Practice (2d Ed.) 2245; and the complaint should be dismissed with prejudice when it appears that it cannot be amended to cure the deficiency.

(10) There having been no partial release, designation of pooling, nor assignment as to a segregated portion of the 428-acre tract by the defendant or by its assignor, the lease in question in this case has not been divided and remains indivisible.

(11) Since the plaintiff has sued to cancel an indivisible lease insofar only as it affects 188 acres of the 428 acres subject thereto, without alleging any fact which would result in a division of the lease, the motion to dismiss should be sustained.

(12) Since the demands for damages and attorney's fees are incidental to and dependent upon the plaintiff's establishing that he is entitled to cancellation, Pallant v. Sinatra, D.C., 59 F.Supp. 684, Id., D.C., 7 F.R.D. 293; LeBanc v. Danciger Oil & Refining Co., supra, they must also be rejected in view of our conclusion that he is not entitled to demand cancellation. Act No. 168 of Louisiana Legislature of 1920, LSA–R.S. 30:102, Louisiana Revised Statutes of 1950.

In summary, we are of the opinion that: (a) There has been no exercise of the option granted to the lessee under paragraph 6 of the lease, which therefore remains a single indivisible obligation and the plaintiff may not sue to cancel the lease as to a part of the land subject thereto and leave it in effect as to the remainder; and, (b) Under the terms of the pooling orders, there is actual production from the premises subject to the lease and the plaintiff has not attacked the validity of these orders in the manner exclusively provided by law. For either of these reasons, the motion to dismiss should be sustained.

In view of our conclusion, it is unnecessary to pass upon the motion to strike the demand for jury trial.

Judgment in keeping with the above opinion will be signed upon presentation.