PONDER, Justice.
 

 The plaintiffs have appealed from a judgment of the lower court maintaining exceptions of no right and no cause of action and dismissing their suit.
 

 The record in this case, comprising the plaintiffs’ petition, exceptions and plea interposed by the defendants, and the evidence introduced thereunder discloses that the plaintiffs, in a letter dated April 11, 1947, requested the commissioner of conservation to call a public hearing under the provisions of Act 157 of 1940 to determine if there had been an excess production of the legal allowable oil and gas from any of the wells of the Union Oil Company of California during the period of three preceding years; if oil or gas had been produced from the wells in a manner that would reduce the quantity of oil recoverable from the area in which the wells were located; if oil or gas had been produced from the wells in such a manner as to excessively and improperly dissipate the reservoir energy; if oil or gas had been produced from the wells in excess of the amount allowed by the rules, regulations or orders of the commissioner of conservation; and if there had been any waste of oil or gas in the production from the wells as defined by Act No. 157 of 1940. They requested that the Union Oil Company and other interested parties be given notice of the hearjng and that the Union Oil Company be ordered to produce all its records disclosing the oil and gas that was produced from each of the wells operated by them, over the period of three preceding years.
 

 On June 5, 1947, the attorney for the commissioner of conservation addressed a letter to the plaintiffs informing them that an investigation by their field representative indicated that the Union Oil Company had committed technical violation of the orders of the department in that individual-wells had not been produced in conformance with the allowables granted them;, that the method of this company of compiling and maintaining records of individual' well production was incorrect and insufficient and the department was putting them on notice to correct the inaccuracies in reporting and requiring them to make then-reports more easily subject to analysis;, that the investigation of the field representative indicated that the wells flowing into G. W. battery have been consistently produced, as a whole, under the entire-lease, well within the amount allocated to-
 
 *376
 
 it; that the operations of the plaintiffs’ company were not affected because the “B” zone has been considerably underproduced during the period of January, 1946 through March, 1947; that the total underproduction of “B” zone, during the above mentioned time, was in excess of 89,000 barrels and the data obtained with reference to the “A” zone indicates it to be underproduced, during the year 1946, some 24,000 barrels; that, since the plaintiffs’ wells are completed, one in the “A” zone, two in the “B” zone and one in the “B” zone stringer, the section of the Union Oil Company is underproducing the “A” and “B” zones, which results in the plaintiffs’ favor inasmuch as there remains an excess of 100,000 barrels of oil in these two zones,, a portion of which can still migrate to the plaintiffs’ wells, they being in an extreme up-dip position; that the commissioner is placing the Union Oil Company on notice that in the future their records must be kept in strict compliance with the regulations of the department, which the commissioner feels is the only action justified at the time and that a hearing is unnecessary; that the report of the field representative is on file in the department and may be reviewed by the plaintiffs, if they so desire; that the commissioner feels that the action taken by him is the only open course, since he cannot make restitution for the loss the plaintiffs feel they might have sustained in the past and their only recourse, in this respect, would be in the court; and that, in view of the fact that the data obtained indicates the production from “B” zone to be less than originally thought by the department, the department feels that it will be necessary to reduce therwithdrawals from this zone to be effective with the July allowables.
 

 On June 14, 1947 the plaintiffs addressed another letter to the commissioner of conservation acknowledging the receipt of the letter of June Sth. The plaintiffs strongly protested the proposed reduction of the withdrawals from “B” zone until action had been taken to prevent violations of allocated allowables and until correct and sufficient data had been presented at a public hearing showing the need for the reduction. The plaintiffs set out in the letter various reasons why a public hearing should be had before the reduction was made. Without reciting the lengthly arguments advanced by the plaintiffs in this letter, complaining of the action of the commissioner of conservation, it is sufficient, for the purpose of this decision, to recite that the plaintiffs insisted that the public hearing be held or to be informed whether or not they would be forced to the alternative of a mandamus suit under the provisions of Act No. 157 of 1940. The plaintiffs also, in this letter, requested the commissioner to bring suit against the Union Oil Company to prevent further violation of the orders, rules and regulations of the department and the provisions of Act No. 157 of 1940; and, in order to effectually prevent and enjoin such viola
 
 *377
 
 tion, to require the Union Oil Company to establish and maintain separate tanks and lines for each well operated by it in that particular area. On June 27, 1947 the commissioner of conservation issued an order calling a public hearing to be held on July 1, 1947, for the purpose of determining whether or not irregularities had occurred or were occurring in the production of oil in violation of the orders of his department. On June 30, 1947, the day before the hearing was to be held, the plaintiffs instituted the present suit against the Union Oil Company under the provisions of Section 13, 14 and IS of Act No. 157 of 1940. The defendant interposed exceptions of no right and no cause of action, and a plea to the jurisdiction of the court. The exceptions of no right and no cause of action was maintained by the lower court and the plaintiffs’ suit was dismissed.
 

 Section 13 of Act No. 157 of 1940 provides : “Whenever it shall appear that any person is violating or threatening to violate, any statute of this State with respect to the conservation of oil or gas, or both, or any provision of this Act, or any rule, regulation or order made by the Commissioner thereunder, the Commissioner of Conservation shall bring suit against such person * *
 

 Section 14 of the act merely provides the manner in which appeals may be taken from the judgment in the suit.
 

 Section 15 of the act provides: “In the event the Commissioner shall fail to bring suit within ten (10) days to enjoin any actual or threatened violation of any statute of this State with respect to the conservation of oil and gas, or of any provision of this Act, or of any rule, regulation or order made thereunder, then any person or party in interest adversely affected by such violation, and who has notified the Commissioner in writing of such violation, or threat thereof, and has requested the Commissioner to sue, may, to prevent any or further violation, bring suit for that purpose in the district court of any parish in which the Commissioner could have brought suit. If, in such suit, the court holds that injunctive relief should be granted, then the Commissioner shall be made a party and shall be substituted for the person who brought the suit, and the injunction shall be issued as if the Commissioner had at all times been the complaining party.”
 

 We carefuly examined the entire act and find that in Section 3 the commissioner is given jurisdiction and authority over all persons and property to enforce this act and all other acts relating to the conservation of oil and gas. He is given authority to make inquiries, collect data, to make investigations and inspections, to examine properties, leases, papers, books and records, to examine survey, check, test and engage oil and gas wells, tanks, refineries and modes of transportation. He is given authority to hold hearings and to provide for the keeping of records and the making of reports and to take such action neces
 
 *378
 
 sary to enforce the act. He has authority after hearing to make rules, regulations and ministration and enforcement of the act. issue orders necessary for the proper ad-In Section 5(a) the commissioner is required to prescribe the rules of order or procedure in hearing or other proceeding before him under the act. He is empowered to give notice by personal service through any officer authorized to serve process or any agent of the commissioner in the same manner as provided by law for the service of citation in civil actions in the district courts of the State. Under Section 7(a) he is empowered to subpoena persons and records, as may be material on the question before him. In case of failure or refusal of any person to comply with any subpoena issued by the commissioner, any district court, on the application of the commissioner, may issue an attachment to compel a compliance with the subpoena. He has authority under the act to force the pooling of separate tracts of land into a drilling unit. He has authority to limit the production in any area or field and to prorate the allowable production.
 

 Section 11 of the act provides: "Any interested person adversely affected by any statute of this State with respect to conservation of oil or gas, or both, or by any provision of this Act, or by any rule, regnlation or order made by the Commissioner hereunder, or by any act done or threatened thereunder, and who has exhausted his administrative remedy, may obtain court review and seek relief by a suit for an injunction against the Commissioner as defendant, which suit shall be instituted in the district court of the parish in which the principal office of the Commissioner is located. * * *"
 

 It is apparent that the Legislature has delegated to the commissioner of conservation, the authority to find the facts upon which the law is to be ap~Iied. The various powers conferred upon the commissinner in this act support this conclusion and the provision in Section 11, requiring the exhaustion of administrative remedy before relief can be sought from the courts, renders the question. beyond dispute.
 

 In the case of Hunter Co. Inc., et al. v. McHugh, 202 La. 97, 11 So.2d 495, we went at length into the question of the fact finding powers delegated to the conservation commissioner and pointed out that it was not a delegation of either judicial or legislative power. We also called attention to the fact that administrative officers with fact finding powers relieved the Legislature and the judiciary from a great deal of detail work and imposed these duties on an officer as agent of the State for determination because of his peculiar knowledge of such matters. We pointed out also that courts will not place their judgment above such administrative officers because of this fact. On account of the development and growing progress of our country, it would be practically, if not impossible, for the Legislature and courts to
 
 *379
 
 expeditiously- dispose of these matters, if it were not for the fact that these administrative officers relieve the Legislature of all this detail work and the courts from being congested with many matters that can he thrashed out by those familiar with them. Without going into the various allegations of the plaintiffs’ petition, we might say, however, that they allege no specific violation of any order, rule or law. Their allegations are general. We quoted at some length the communications passing between the plaintiffs and the commissioner and referred to the general allegations contained in the petition in order to show the wisdom of the Legislature in placing the preliminary sifting process of matters peculiarly within the competence of the administrative authority in the conservation commissioner which will prevent attempts to swamp the court by resorting to them in the first instance. We also recited these facts in order to show the uncertainty existing. In other words, it has not been determined what wells are overproducing and what wells are underproducing. These, as well as all the other indefinite matters, should be thrashed out and relief denied before resort is made to the courts.
 

 The doctrine of exhausting the administrative remedy before relief can be sought from the courts is well recognized in this State. We referred to this matter in the case of Hunter v. McHugh, supra and many other cases. One of the latest cases recognizing this doctrine is the case of Porter v. O’Neal, 205 La. 445, 17 So.2d 622. See also Shreveport Laundries Inc. v. Southern Cities Distributing Co., 176 La. 994, 147 So. 56.
 

 The jurisdiction of the courts should not be invoked except in extreme cases or where irreparable injury would result.
 

 For the reasons assigned, the judgment is affirmed at appellants’ cost.
 

 HAWTHORNE and BOND, JJ., concur in the.decree.
 

 O’NIELL, C. J., absent.