**Louise M. MAYER, Valery Mayer, and Hugh Mayer**

v.

**TIDEWATER OIL COMPANY.**

**Civ. A. No. 9073.**

United States District Court
W. D. Louisiana,
Opelousas Division.

June 29, 1963.

---

Duncan M. Smith, Jr., Lafayette, La., for plaintiffs.

Liskow & Lewis, Cullen R. Liskow, Lake Charles, La., for defendant.

PUTNAM, District Judge.

Plaintiffs, residents of St. Landry Parish, Louisiana, filed this suit against defendant, a nonresident of this State, in the Twenty-seventh Judicial District of Louisiana. In due course it was removed here, the matter in controversy being in excess of $10,000.00.

The petition alleges that on July 29, 1954, plaintiffs executed an oil, gas and mineral lease on 133 acres of land owned by them in St. Landry Parish, in favor of F. J. Muller. It is now held by defendant Tidewater, under assignment from Muller.

It is further alleged that defendant drilled and completed two wells in the Cockfield No. 2 Sand of the Opelousas Field, on property in close proximity to the lands in dispute, these being the W. P. Ray No. 1 and the J. R. Haas No. 3 wells; thereafter on application of defendant Order No. 257–A of the Commissioner of Conservation of the State of Louisiana issued effective March 1, 1959, creating and establishing drilling and production units for this sand in the Opelousas Field.

The W. P. Ray No. 1 well was designated as unit well for Unit No. 3, which unit contained 320 acres, and the J. R. Haas No. 3 well was so designated for Unit No. 4, containing 340 acres, by Order 257–A. All of the land belonging to plaintiffs was included in these two units. Then followed Commissioner's Order No. 257–A–1, confirming these units and establishing Unit 21–2, adjacent to Units 3 and 4 on the Northwestern boundaries thereof. Defendant then drilled the R. L. Waterbury No. 1 well and completed this well as a producer in Cockfield No. 2 Sand, which was designated as unit well for Unit No. 21–2.

Up to this point all was well. But on application of defendant another hearing was had before the Conservation Commissioner on January 12, 1961, from which issued Commissioner's Order No. 257–A–2, effective February 1, 1961, removing a portion of plaintiffs' lands from Units 3 and 4, this being in the Northwestern portion of said units and between Units 3 and 4 and Unit 21–2. On June 10, 1961, defendant executed a partial release, dropping from their lease this portion of plaintiffs' property.

■ The petition alleges that the application of defendant which resulted in Order No. 257–A–2 was not based upon sufficient geological information, that Tidewater's actions in so doing was unrealistic, and violated the obligations it owed to plaintiffs not to allow or permit wilful drainage of the hydrocarbons underlying petitioners' property under the terms of the lease, under the terms of the Commissioner's Orders, and under the implied obligations of the Lessee to prevent drainage, depletion and waste.

Although it is alleged that the acreage released by defendant was not normally sufficient to support the drilling of a well, it was leased by plaintiffs on June 23, 1961, and on August 21, 1961, was proven to be productive by the drilling of another well on other property belonging to Adler LeDoux, placed on production January 15, 1962, with which their land was subsequently unitized.

Plaintiffs pray for damages in the sum of $118,764.48, being the value of hydrocarbons allegedly drained from their lands between the date it was excluded from Units 3 and 4, February 1, 1961, to the time it was unitized with the Adler LeDoux well, in the latter part of January, 1962.

We now consider the matter upon defendant's motion to dismiss, filed on October 8, 1962. In the opinion of the Court this motion should be granted.

The Conservation Commissioner is given various powers in connection with the production of oil in this State, found principally in Act 157 of 1940, now appearing in LSA–R.S. 30:1 to 30:20.

By LSA–R.S. 30:9(B) drilling and producing units were authorized to be created by the Commissioner, it being contemplated by the very language of that section that the drilling unit is to be that area that can be efficiently and economically drained by one well and that it "shall constitute a developed area as long as the well is located thereon which is capable of producing oil or gas in paying quantities."

■ As is well known, the statutes plainly provide that orders creating units are issued after hearing, and the Commissioner's findings must, of course, be based on evidence submitted; but when evidence is submitted, his judgment and the order is then binding according to all the decisions and is subject to attack (after the parties have exhausted the administrative remedy before him) not by a collateral suit as the one now before this Court but in the manner provided by LSA–R.S. 30:12.

"An interested person adversely affected by any law of this state with respect to conservation of oil or gas, or both, or by a provision of this Chapter, or by a rule, regulation, or order made by the commissioner hereunder, or by an act done or threatened thereunder, *and who has exhausted his administrative remedy,* may obtain court review and seek relief by a suit for an injunction

against the commissioner as defendant. Suit shall be instituted in the district court of the parish in which the principal office of the commissioner is located and shall be tried summarily. The attorney representing the commissioner may have a case set for trial at any time after ten days' notice to the plaintiff or his attorney of record. The burden of proof shall be upon the plaintiff and all pertinent evidence with respect to the validity and reasonableness of the order of the commissioner complained of shall be admissible. *The law, the provision of this Chapter, or the rule, regulation, or order complained of, shall be taken as prima facie valid.* This presumption shall not be overcome in connection with any application for injunctive relief, including a temporary restraining order, by verified petition or affidavit of or in behalf of the applicant. The right of review accorded by this Section shall be inclusive of all other remedies, but the right of appeal shall lie as hereinafter set forth in this Chapter." (Emphasis added.)

In O'Meara v. Union Oil Company of California, 212 La. 745, 33 So.2d 506, the Court in dismissing Plaintiff's suit for lack of cause of action based its dismissal on the finding that one complaining of the orders of the Commissioner should first exhaust his administrative remedy before applying to the Courts and then the Court, quoting Section 11 of the Act of 1940, which now appears in LSA–R.S. 30:12, recognized that the remedy in Court is by injunction *against the Commissioner* as therein specifically provided for.

The O'Meara case has been recognized in various decisions. In Simmons v. Pure Oil Company, 241 La. 592, 129 So. 2d 786, Plaintiff brought suit for cancellation of a lease based on allegations which went so far as to charge fraud on the part of a lessee in connection with the reformation of a unit formed by the Conservation Commissioner and which

Plaintiff complained about seeking as relief for his complaint cancellation rather than damages as do the Plaintiffs here.

The Court there remarked that Plaintiff did allege injury resulting from Defendant's act but that the charges were predicated on speculative assumptions (the case here) and "assertions which may be said to be contrary to the findings of the Conservation Commissioner."

That last phrase is particularly applicable here because the Conservation Commissioner had issued an order finding that the land which Plaintiffs claimed Defendant drained by the unit well was beyond the area for which that well was to produce oil assumed by the order itself to be coming only from the land within the unit area.

The Court concluded in that case that Plaintiffs' allegations were contrary to the administrative holding of the Conservation Commissioner and this statement shows clearly that the recognized rule is that a unit formed by the Commissioner (unless there might be some fraud alleged, which is not the case here), legally fixes the limits of the production from the unit well for all purposes, and the only relief then is by proper procedure, either administratively or in Court, to show if there is any error that might be alleged to have been committed by the Commissioner in fixing the unit.

For, as said in the cited case:
" * * * Therefore, since it is presumed as a matter of law that the Commissioner acted in good faith and on the basis of the evidence before him when he authorized the exceptional drilling location on the showing made by defendant, and also when he re-established the units after finding that defendant had discovered a separate gas pool of the 'D' Sand in the Ruston Field and created a new spacing unit containing all the land which would be economically drained by the Holloway well, the charge that defendant has not acted as a prudent admin-

istrator in developing the property to the mutual advantage of the parties is nothing more than the pleader's conclusion which necessarily conflicts with the established facts.

"Accordingly, forasmuch as Pure has been and is developing the leased premises conformably with the orders of the Commissioner of Conservation, it appears that it has acted as a prudent administrator * * * "

And then finally it was said that the plaintiff even argued that Defendant was guilty of manipulating the processes of the Conservation Commissioner in that it applied to him for the issuance of orders while concealing its true purposes to obtain a change in the drilling pattern for its own advantage; certainly much stronger allegations than can be found in the petition now before this Court. But the Supreme Court answered that statement in this way:

"This postulation is without merit. It occurs to us that this is nothing more than a collateral attack on the findings of the Commissioner, which cannot be countenanced (see O'Meara v. Union Oil Co. of California, 212 La. 745, 33 So.2d 506) as counsel is really saying that the Commissioner was imposed upon so that he acted improvidently. * * * "

In Everett v. Phillips Petroleum Company, 218 La. 835, 51 So.2d 87, the Supreme Court of Louisiana used this language as the rule that must be here applied:

"Alternatively, counsel for plaintiff assert that, if the orders of the Department of Conservation are found to be in conflict with the provisions of the lease, then they are illegal, confiscatory and impair the obligation of an existing contract as they 'were based entirely on testimony which was given to the Commission which was misleading, and clearly and patently did not conform with the facts existing at the time'. There is no merit whatever in this

attack for, as shown above, Act No. 157 of 1940 has been sustained as to all constitutional challenges. *And, insofar as concerns the claim that the Commissioner's orders are based on misleading evidence, counsel cannot, in this proceeding, assail those orders which are prima facie valid.* The remedy, where it is contended that the Commissioner's action is arbitrary, is to obtain court review in a suit for an injunction against the Commissioner after all administrative remedies have been exhausted. See Section 11 of Act No. 157 of 1940 and O'Meara v. Union Oil Co. of California, 212 La. 745, 33 So.2d 506." (Emphasis Added) (Footnote 4, p. 91)

The O'Meara case was followed and applied by Judge Porterie in this Court in the case of Smith v. Carter Oil Company, D.C., 104 F.Supp. 463. There he sustained a motion to dismiss a case involving pooling orders saying (104 F.Supp. page 472) that there was production from the premises according to the pooling orders and that "[P]laintiff has not attacked the validity of these orders in the manner exclusively provided by law."

While it is difficult to determine just what cause of action Plaintiffs assume they present, it all appears clearly to depend on the attack against the order of the Conservation Commission of Louisiana; and, as the law is so clear on that subject, the Motion to Dismiss should be maintained without the necessity of further discussion.

A similar claim was made and denied by this Court on May 10, 1963 in the matter entitled Lloyd D. Savoy v. Tidewater Oil Company, D.C., 218 F.Supp. 607. Counsel again cite McDonald v. Grande Corp., 148 So.2d 441 (La.App. 1962), which is entirely inapposite for the reason that there was no Commissioner's Order in that case, the actions of the defendant being taken by it independently pursuant to the pooling clause of the lease.

There is no allegation that defendant did not fairly present to the Commissioner all geological and engineering information in its possession. There is no showing or allegation of fraud or collusion. Accordingly, we hold that the decision reflected by Commissioner's Order No. 257–A–2 is not that of this defendant but that of the Commissioner, not subject to collateral attack.

This suit is dismissed and judgment will be entered accordingly.