SOUTHERN NATURAL GAS COMPA-
NY, California Oil Company, and Pan
American Petroleum Corporation

v.

MOUND COMPANY.
Civ. A. 13799.

United States District Court
E. D. Louisiana,
New Orleans Division.

May 15, 1964.

M. C. Thompson, Monroe, La., Robert C. Cudd, III, Shreveport, La., L. K. Benson, H. H. Hillyer, Jr., H. H. Hillyer, III, New Orleans, La., for plaintiffs.

J. Mort Walker, Jr., Lucius Suthon, New Orleans, La., Leon Jaworski, M. W. Parse, Jr., Houston, Tex., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for defendant.

FRANK B. ELLIS, District Judge.

The parties to this litigation are the Southern Natural Gas Company of Birmingham, Alabama, the California Oil Company of San Francisco, California and the Pan American Petroleum Corporation of Tulsa, Oklahoma, as parties plaintiff, and the Mound Company of Houston, Texas, as defendant.

Plaintiffs allege that they are the owners of certain oil, gas and mineral leases affecting property situated in Saint Mary Parish, Louisiana, and that by Order Number 274–A, dated March 22, 1956, the Commissioner of Conservation for the State of Louisiana issued special rules and regulations covering the production of oil and gas from the Godchaux Sand in the Franklin Field, Saint Mary Parish.

In addition to the Godchaux Sand there are, among others, two other sands in the Franklin Field, the Lucia Sand and the Crawford Sand. Order 274–A defines the Godchaux Sand as " * * * being that sand found to be productive of oil and gas in the Southern Natural Gas Company's—Mrs. Jules Godchaux No. 3 Well, Section 37, Township 15 South, Range 9 East. St. Mary Parish, Louisiana, between the depths of 11,830 feet and 11,965 feet, Schlumberger Electrical Log measurements." The Order further defines the Lucia Sand as " * * * that sand defined in Department of Conservation Order No. 274–1, dated September 29, 1954."

Plaintiffs allege that the Crawford Sand, heretofore undefined by the Commissioner, is that sand found between the depths of 11,718 feet and 11,744 feet, Plaintiffs further allege that the sands are so situated that the Crawford Sand is the shallowest, the Godchaux Sand the deepest and the Lucia Sand lies between the two.

Plaintiffs allege that on or about December 17, 1955, the defendant drilled

its Lucia No. 3 Well from a surface location within the exterior surface boundaries of Godchaux Sand Unit; that the well penetrated the Crawford Sand, the Lucia Sand and then the Godchaux Sand and that the Commissioner's Order Number 274–A prohibited defendant from producing the Lucia No. 3 Well in the Godchaux Sand. Defendant allegedly dually completed the Lucia No. 3 in the Lucia Sand and in the Crawford Sand and produced oil from both completions from the date of completion, on or about February 12, 1956, until approximately December 7, 1962, under allowables granted by the Commissioner for production from the Lucia and Crawford Sands.

Plaintiffs allege upon information and belief that the production was from the Godchaux Sand, defendant having failed to seal off the Godchaux Sand Reservoir from the upper reservoirs in the course of drilling and completing the well. Plaintiffs state that such production of oil from the Godchaux Sand was illegal and that defendant has unjustly enriched itself at plaintiffs' expense.

Plaintiffs assert that on December 7, 1962, the communication between the Godchaux Sand and the upper sands was sealed off by order of the Department of Conservation. From the inception of production until that date it is alleged that a total of 582,145 barrels of oil were produced from the well, of which defendant allocated 288,870 barrels to the Crawford Sand and 293,275 barrels to the Lucia Sand.

Plaintiffs allege that, as to the Crawford Sand, all of the oil so produced came from the Godchaux Sand. As to the Lucia well, all or the major portion thereof came from the Godchaux Sand. It is asserted that the extent, if any, to which oil originally in place in the Lucia Sand may have contributed to such production from the Godchaux Sand is a matter which lies peculiarly within the knowledge of the defendant. It is urged that defendant should be called upon to assert and prove the amount of such Lucia Sand production, if any there was.

Plaintiffs' second cause of action is that defendant has so made a work on plaintiffs' property and so used it as to deprive them of the liberty of enjoying their property and has damaged plaintiffs in violation of Louisiana Civil Code Article 667;[1] and, that defendant has deprived plaintiffs' rights to produce from their properties their just and equitable share of the production from the Godchaux Sand Reservoir.

Plaintiffs' third cause of action is to compel defendant to account for such amounts as defendant may have been unjustly enriched at plaintiffs' respective expenses as a result of the allegedly illegal acts.

The controversy is presently before this court on motion of defendant to dismiss on grounds that (1) the court lacks jurisdiction over the subject matter in that the Commissioner of Conservation of the State of Louisiana has primary jurisdiction over the matters alleged; (2) that the court lacks jurisdiction in that plaintiffs have failed to pursue and exhaust their administrative remedies; and (3) that the complaint fails to state a claim upon which relief can be granted in that there is no basis in law for the claims asserted.

Defendant charges that nowhere in the complaint have plaintiffs alleged that they have applied to the Commissioner for a determination of the factual matters (including engineering, geological, and other technical data), nor have the plaintiffs sought appropriate proration orders which would give them their just and equitable share of the production from the Godchaux Sand Reservoir, if, in fact, defendant has produced more than its just and equitable share. Defendant states that having failed to exhaust or even to pursue their administrative remedies before the Commissioner, plaintiffs have no right to invoke the jurisdic-

1. "Art. 667. Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."

424

tion of any court, and certainly not the jurisdiction of this Court.

Defendant states that under plaintiffs' allegations this court would be required to determine (1) whether there had been communication between the Godchaux Sand and the Lucia Sand; (2) when this communication, if any, occurred; (3) what percentage of this total production was Godchaux production and what production was simultaneously produced from the Lucia Sand; (4) whether there was communication between the Crawford and the Lucia Sands; (5) when this communication, if any, occurred; (6) what proportion each sand was produced; (7) whether there was a violation of the orders of the Department of Conservation, and (8) how much drainage, if any. Defendant urges that the determination of all these questions involves highly technical matters with which the Commissioner is particularly qualified to deal.

Defendant urges that assuming, without conceding, that it has produced more than its fair and equitable share of the Godchaux Sand production, a plain, simple administrative remedy was available to plaintiffs which they did not even pursue. The conservation statutes, defendant argues, grant the power to the Commissioner to limit the production from a particular well or field so as to accord each producer his just and equitable share; that the Commissioner could have required that defendant's Lucia No. 2 Well, which was completed in the Godchaux Sand, be shut in or its production limited, or, alternatively, he could have increased the allowable of wells in the reservoir in which plaintiffs had an interest. In either case, such action would have allowed plaintiffs "to catch up" due to the alleged illegal production from the Godchaux Sand by the Lucia Number 3 Well.

Defendant cites O'Meara v. Union Oil Company, 212 La. 745, 33 So.2d 506, for support of this argument, that is, that the Legislature has delegated to the Commissioner of Conservation, the authority to find the facts upon which the law is to be applied.

Plaintiffs' position in reply is that defendant cannot be compelled to seek retroactive relief from the Louisiana Commissioner Plaintiffs insist that the applicable statute clearly denies the Commissioner any authority to make such a retroactive adjustment of allowables. Plaintiffs cite Anisman v. Stanolind Oil & Gas Company, La.App., 2 Cir.1957, 98 So.2d 603, as authority for the proposition that the Commissioner is without any power or authority to compel an accounting for the value of products recovered and sold from plaintiff's (Anisman's) property and to render a judgment accordingly. In other words, plaintiffs argue that there is no remedy provided by the statute to enforce the private rights created by the statute, and, therefore, the private litigant need not exhaust a non-existent remedy. An examination of the leading cases is essential.

Turning first to O'Meara, we find that the facts disclosed a controversy wherein the plaintiffs requested the Commissioner of Conservation to call a public hearing under the act to determine if there had been an excess production of the legal allowable oil and gas from any of the wells of the Union Oil Company during the period of three preceding years. They requested that the Union Oil Company and other interested parties be given notice of the hearing and that the Union Oil Company be ordered to produce all of its records disclosing the oil and gas that was produced from each of the wells operated by them over the period of three preceding years.

Continuing with O'Meara the attorney for the Commissioner addressed a letter to plaintiffs informing them that an investigation by their field representative indicated that the Union Oil Company had committed a technical violation of the orders of the department in that individual wells had not been produced in conformity with the allowables granted them. He stated that a hearing was unnecessary in that the Union Oil Company

had been placed on notice that in the future their records must be kept in strict compliance with the regulations of the department. The Commissioner felt that this was the only action justified at the time and that he could not make restitution for the loss the plaintiffs felt they might have sustained in the past and that their only recourse would be in the courts. When the plaintiffs protested, the Commissioner issued an order calling a public hearing and the day before the hearing the plaintiffs instituted the suit against Union Oil.

Defendant's exceptions of no right and no cause of action and a plea of the jurisdiction of the court were maintained in the District Court and the suit was dismissed. The Supreme Court affirmed holding that the Commissioner must find the facts upon which the law is to be applied and that the doctrine of exhausting the administrative remedy before relief can be sought from the courts is well recognized in Louisiana.

Anisman was a suit wherein the plaintiff, the owner of fractional interests in units of land, sought an accounting of gas and other products produced and marketed by defendant, the designated operator of the units. Defendant interposed exceptions to the jurisdiction rationae materiae and of no cause of action. Plaintiff supplemented his petition with the allegation of an order of the Commissioner fixing the costs of drilling, completing and equipping wells on the two units involved and further alleged that he had never consented nor agreed to such costs as fixed by the Commissioner.

Defendant's plea to the jurisdictions rationae materiae was primarily predicated upon the contention that a fixing of drilling and operating costs was exclusively a function of the Commissioner. Any such order, it was alleged, is reviewable only in a suit for injunction naming the Commissioner as a party defendant, that is, the order fixing drilling costs could not be collaterally attacked and was subject to judicial review only in an injunction proceeding. Defendant

further contended that all administrative remedies should have been exhausted before judicial relief could be sought. The lower court dismissed the suit. An appeal was taken to the Supreme Court and that tribunal transferred the matter to the Court of Appeal for the Second Circuit, Anisman v. Stanolind Oil & Gas Company, 232 La. 514, 94 So.2d 650. In reversing the Court of Appeals stated that:

"[W]e do not have here a matter in which the Commissioner has any interest, nor over which he has any jurisdiction. An injunction suit by this plaintiff against the Commissioner could not possibly accord him the relief which he seeks, for the Commissioner is without any power or authority to compel an accounting and render a judgment with reference to properties over which the district court for Caddo Parish has original jurisdiction. It follows that a suit by plaintiff against the Commissioner of Conservation could not procure the relief which is sought in this proceeding." Anisman v. Stanolind Oil & Gas Company, supra, 98 So.2d at page 605.

The matter before the court in Anisman was not the alleged illegal production of oil, as in the instant case, but rather plaintiff's right to an accounting of the cost of operation as compared with the value of products marketed as illustrated by the following quotation:

"Plaintiff's right to an accounting is not affected by the fact that the cost of operation may have exceeded the value of products marketed, nor is it affected by defendant's right to retain the value of products marketed up to a sum sufficient to cover the cost of development and operation." 98 So.2d 603, 605.

So it is that Anisman seeks a mathematical accounting of dollar value of production versus dollar value of operating costs and holds for the proposition that such a computation is a matter for the Courts and hence beyond the authority of the Louisiana Conservation Com-

mission. That portion of the Conservation Statute dealing with the pre-emptive rights of the Commission is noticed as follows:

"An interested person adversely affected by any law of this state with respect to conservation of oil or gas, or both, or by a provision of this Chapter, or by a rule, regulation, or order made by the Commissioner hereunder, or by an act done or threatened thereunder, and who has exhausted his administrative remedy, may obtain court review and seek relief by a suit for an injunction against the commissioner as defendant. Suit shall be instituted in the district court of the parish in which the principal office of the commissioner is located and shall be tried summarily. The attorney representing the commissioner may have a case set for trial at any time after ten day's notice to the plaintiff or his attorney of record. * * *" LSA–R.S. 30:12.

In the case at bar the pleadings indicate that the communication between the Godchaux Sand and the upper sands was sealed off by order of the Department of Conservation on or about December 7, 1962. It is also indicated, by way of plaintiffs' memoranda, that several days after this suit was filed the defendant sold its leases in the Franklin Field, including the offending well interest, to a third party.

The Court agrees with plaintiffs that any Order of the Commissioner requiring that the Lucia No. 2 Well, which was completed in the Godchaux Sand be shut-in, or its production limited, or alternatively, an increase in the allowable of wells in the reservoir in which plaintiffs had an interest, may have serious constitutional infirmities if attempted to be visited upon defendant's successor in interest for defendant's wrongful acts, if any.

Any such order by the Commissioner to allow plaintiffs "to catch up" due to the alleged illegal production from the Godchaux Sand by the Lucia No. 3 Well

may have considerable difficulty withstanding constitutional tests upon judicial review, when applied to defendant's successor in ownership of the leases.

However, the Court agrees with defendant in that the question presented is not whether the Commissioner has jurisdiction of the entire controversy, but whether any part of the case is within the exclusive jurisdiction of the Commission.

Davis, in his Administrative Law Treatise, cited by defendant, correctly expresses the rule, in Section 19.07 as follows:

"On the question whether the doctrine applies to problems or relief which are beyond administrative jurisdiction, the theory seems reasonably clear. The test is not whether some parts of the case are within the exclusive jurisdiction of the courts; the test is whether some parts of the case are within the exclusive jurisdiction of the agency. Because of the purpose of the doctrine—to assure that the agency will not be by-passed on what is essentially committed to it—and because resort to the courts is still open after the agency has acted, the doctrine applies even if the agency has no jurisdiction to grant the relief sought." (Italics supplied)

United States v. Western R. R. Company, 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed. 2d 126, discourses as follows on the primary jurisdiction versus exhaustion query:

"The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. 'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. 'Primary jurisdiction', on the other hand, applies where a

claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views. General American Tank Car Corp. v. El Dorado Terminal Co., 308 U.S. 422, 433 [60 S.Ct. 325, 331, 84 L.Ed. 361]." 352 U.S. at pages 63–64, 77 S.Ct. at page 165, 1 L.Ed.2d 126.

The Louisiana Supreme Court in O'Meara, maintains a similar position. The Court cautioned that:

"It is apparent that the Legislature has delegated to the commissioner of conservation, the authority to find the facts upon which the law is to be applied." 212 La. 745, 33 So.2d 506, 509.

Defendant also cites Sun Oil Company v. Martin, S.D.Tex.1963, 218 F.Supp. 618, aff'd. 5 Cir.1964, 330 F.2d 5. This opinion acts as an aid to and buttress for the principle that an administrative body of experts operating in the field of oil and gas are better able to interpret labyrinthian factual questions that cry out for a solution usually requiring an optimum of, and often conflicting, scientific knowledge. It cannot be gainsaid that the interests of justice have been well served by the creation of administrative bodies like the Federal Communications Commission, or Federal Power Commission or the Interstate Commerce Commission, and many others who exercise quasi-judicial functions, each in its particular field.

Anisman v. Stanolind Oil & Gas Company, supra, does no violence to O'Meara. All Anisman stands for is the fundamental proposition that the Commissioner is without power or authority to compel an accounting and render a judgment thereon. The Court disagrees with defendant in that Anisman is not distinguishable from but is in harmony with O'Meara.

A careful reading of both opinions reveals that O'Meara serves as a judicial recognition of the limited jurisdiction of the Commission as an agency to find the facts while Anisman sets forth the rule of law that the courts, and only the courts, have power to compel an accounting and to render a judgment.

After a careful review of the jurisprudence and the statutes the court will refer the matter to the Commissioner of Conservation, State of Louisiana, it being apparent that a state district court, guided by state appellate level decisions, would also do the same.

Defendant's motion to dismiss for lack of jurisdiction and failure to pursue and exhaust administrative remedies will be granted. Consequently, defendant's motion to dismiss for failure to state a claim upon which relief can be granted will be dismissed as moot.

So ordered.