517 So.2d 1178 (1987)
Barbara Reaves POLK, Plaintiff-Appellee,
v.
STATE of Louisiana, Through the DEPT. of TRANSPORTATION and DEVELOPMENT, Defendant-Appellant.
No. 86-1137.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1987.
Rehearing Denied January 26, 1988.
*1179 Gold, Simon, Weems, Bruser, Sharp, Sues & Rundell, Donald Sharp, and Humphries & Humphries, Guy E. Humphries, Jr., Alexandria, for plaintiff-appellee.
Fournet & Adams, Robert J. Adams, Lafayette, for defendant-appellant.
Before FORET, YELVERTON and KNOLL, JJ.
*1180 KNOLL, Judge.
The State of Louisiana, through the Department of Transportation and Development (hereafter DOTD), appeals the decision of the trial court ordering it to pay Barbara Reaves Polk (hereafter Polk) relocation and moving costs as additional consideration for its purchase of Polk's home. The trial court ruled that in addition to the $248,380, the stated consideration in the act of sale, DOTD owed relocation and moving costs because during negotiations it promised payment of these items as additional consideration for the sale. Accordingly, the trial court concluded that DOTD owed an additional $170,362.85 to Polk so that she could construct or purchase a comparable home in quality along with moving costs of $8,000.
DOTD appeals, contending the trial court erred in: 1) dismissing its exceptions of prematurity and no cause of action when the evidence showed Polk had not exhausted her administrative remedies prior to filing suit; 2) granting Polk a preliminary injunction and failing to order her to furnish a bond; 3) awarding Polk relocation assistance and moving costs without complying with LSA-R.S. 38:3101, et seq.; 4) admitting parol evidence to vary the written act of sale; 5) failing to award judgment in DOTD's favor on its reconventional demand for rental of the house during the three months in which the preliminary injunction was in effect; 6) accepting the testimony of Polk and her witnesses over DOTD's; and 7) awarding Polk the highest estimate for relocation costs. We affirm.

FACTS
I-49 is a north-south highway linking I-20 on the north at Shreveport to I-10 on the south at Lafayette. DOTD held public meetings to help determine which routes to take. As a result of the meetings and with the concurrence of the Polks, but only if the route took the entirety of their family home, DOTD decided to route I-49 through the entire Polk home. This route would save DOTD having to relocate twelve other families.
In late June 1983 Judge and Mrs. Polk met with Joseph B. Walker, the District Relocation Officer, to discuss the difficulties in relocating the Polks and the procedure for acquiring the home. Time was a problem in relocation. Judge Polk wrote letters to DOTD personnel on August 12 and October 14, 1983, reiterating the time problem with relocating his family and urging that continued delay by DOTD placed considerable hardship on their large family.
In a written communication in August 1983, George B. Land, DOTD's Real Estate Administrator, anticipated that the acquisition of the Polk residence would occur in 6-8 weeks. It was not until December 1983 that Mr. Land telephoned Judge Polk to assure him that the Polk home would be purchased in January 1984. No act of sale was forthcoming from DOTD in January.
On February 10, 1984, DOTD employees, Terry Brown and Ronald Johnson, visited the Polk home to determine the requirements to relocate the Polks.
On June 8, 1984, after no progress was made, Polk went to DOTD headquarters in Baton Rouge with her daughter, Kristie Polk Kasper, for the purpose of getting DOTD to make an offer for the purchase of her home. Polk met with Robert David, DOTD's statewide relocation officer. After Polk agreed to waive DOTD policy to make a contemporaneous relocation offer, David offered to purchase Polk's home for $248,380, telling her that when she relocated, she would be entitled to the difference between the costs of the new home and the purchase price of the sale, as a cost of relocation which was not yet determined. Accordingly, on June 21, 1984, the Polks executed an act of sale conveying their home and improvements to DOTD for the recited sum of $248,380. However, by letter dated July 18, DOTD informed the Polks that they were not eligible for relocation assistance and would be required to surrender their home by October 17, 1984.
Polk filed suit on August 1, 1984, against DOTD seeking additional funds as promised her by DOTD under LSA-R.S. 38:3101, et seq., the Relocation Assistance Act, so she could construct a replica of the home *1181 she sold. DOTD filed exceptions of prematurity and no cause of action, contending Polk failed to exhaust all administrative remedies available under the Relocation Assistance Act. DOTD answered Polk's petition and, after Polk refused to surrender possession of the home to DOTD, filed a reconventional demand to collect a rental of ½ of 1% per month of the amount DOTD paid until such time as Polk surrendered the property.
Polk filed a petition for a preliminary injunction prohibiting DOTD from taking possession of the home which was granted after the trial judge denied DOTD's exceptions.
At trial on the merits DOTD timely reurged the exceptions it first raised.

EXHAUSTION OF ADMINISTRATIVE REMEDIES
DOTD contends that the trial judge should have dismissed Polk's law suit on exceptions of prematurity or no cause of action because she failed to exhaust the administrative remedies available to her, a prerequisite to the filing of suit. DOTD argues that Polk never formally requested relocation assistance and arguendo, if she did, she failed to exhaust her administrative appeal of any adverse decision in writing through DOTD.
The defense that the plaintiff is not entitled to judicial relief because he has not exhausted his administrative remedies may be raised either by an exception of no cause of action or by the dilatory exception of prematurity. Steeg v. Lawyers Title Insurance Corporation, 329 So.2d 719 (La. 1976). In the present case DOTD urged both exceptions.
The general rule is that when the legislature has provided an administrative remedy, it must be exhausted before relief can be sought from the courts. O'Meara v. Union Oil Co. of Cal., 212 La. 745, 33 So.2d 506 (1948).
In relocation assistance cases, the legislature delegated its authority to DOTD to adopt the procedure for an aggrieved displaced person to have his determination of eligibility or the amount of payment reviewed. LSA-R.S. 38:3107(F). Pursuant to this authority, DOTD adopted in pertinent part, the following:
"5.4.1.6 Appeals Process
All displaced persons are advised of their right of appeal by means of the Department's brochure given to each displacee prior to the presentation of the relocation assistance benefits and payments offered by the Department. At such time as a person indicates his dissatisfaction with a determination as to his eligibility for relocation assistance or an amount of payment offered under the relocation assistance program, he shall be promptly furnished the necessary forms and fully notified of the exact procedures to be followed in making an appeal.
PROCEDURES:
1. An appeal may be filed for any of the several determinations made by the Department concerning relocation assistance. Appeals should be submitted on Form # 7.5.411, attaching any supporting information deemed appropriate by the claimant. (See Exhibit # 5.4-Q for a sample Form.) Appeals are to be submitted within 45 days after notification by the Department of the particular determination made."
It is apparent that the provisions of Section 5.4.1.6 establish an administrative appellate procedure. However, in the present case we find no error in the trial court's conclusion that DOTD's exceptions were without merit.
In order to require a petitioner to first exhaust his administrative remedies, the remedies must be adequate. Waggoner v. American Bank and Trust Co., 423 So.2d 794 (La.App. 4th Cir.1982). We find that the administrative process in the present case was inadequate. Nowhere in either the revised statutes or DOTD's relocation procedures is a time limit established within which an administrative appellate decision must be rendered. In the present case such a provision was essential. On July 19, 1984, the day following notification of her ineligibility for relocation assistance, Polk *1182 received a notice to vacate her property by October 17, 1984.
We further find no requirement that an appeal shall be in writing. Section 5.4.1.6 is worded that an appeal "should be submitted" on a form furnished by DOTD. The mandatory "shall" is not used. Also DOTD's handbook for relocation assistance provides, "Upon request, a form will be furnished so that you can set forth your reasons for the appeal." In the case sub judice the record is void of any evidence that DOTD furnished the necessary forms as required by the internal procedures cited hereinabove.
DOTD's reliance on Bounds v. State Department of Highways, 333 So.2d 714 (La. App. 2nd Cir.1976), writ denied, 338 So.2d 295 (La.1976), is likewise misplaced. Unlike Bounds, where the plaintiff's eligibility for relocation assistance was never determined on the administrative level, Polk, as found by the trial court, was promised relocation assistance by DOTD. Through Mrs. Jacqueline McGee, DOTD's District Relocation Officer, Polk explained in June 1984, the reasons for the inadequacy of DOTD's offer to pay relocation expenses at the rate of $35 per square foot of house and in her presence McGee telephoned Polk's concern to Robert David. What Polk received next was the July letter from DOTD advising her that she was entitled to no relocation assistance. Under these facts, strictly following administrative procedure would have been vain and useless, and an inadequate remedy.
Considering the long time lapses and delays caused by DOTD in its purchase of Polk's home, and denying relocation assistance, recourse to the judicial process was her only adequate route to resolve the issue of relocation assistance as promised by DOTD. Therefore, we conclude that the trial court properly overruled DOTD's exceptions.

PRELIMINARY INJUNCTION
DOTD contends that since Polk's suit was to collect monetary damages the trial court erred in granting Polk a preliminary injunction without furnishing bond.
On February 4, 1985, the trial court signed a judgment granting Polk's application for a preliminary injunction. On February 15, 1985, DOTD moved for an appeal of that judgment, and on April 29, 1985, DOTD voluntarily withdrew that appeal.
LSA-C.C.P. Art. 3612 provides that an appeal from a judgment relating to a preliminary injunction must be taken and a bond filed within fifteen days from the date of the judgment. Although DOTD originally appealed the judgment timely, it cannot now reassert errors regarding this judgment after it withdrew its original appeal. The reassertion of these errors in this appeal is clearly made beyond the time limit established in C.C.P. Art. 3612 and cannot be considered. Furthermore, this issue is now moot since the injunction is no longer in effect.

RELOCATION ASSISTANCE AND MOVING COSTS
DOTD contends that the trial court erred in awarding Polk an additional $170,362.85 to rebuild her former home without having to comply with LSA-R.S. 38:3101, et seq. In connection with this award DOTD also argues that the trial court erred in admitting parol evidence to vary the consideration recited in the act of sale and in accepting the testimony of Polk and her witnesses over DOTD's.
DOTD's position is that it was obligated to provide Polk a comparable dwelling not a replica. In support of its position it cites LSA-R.S. 38:3105(A)(1) and the definition of comparable dwelling from its Handbook of Relocation Assistance which state respectively:
R.S. 38:3105(A)(1)
"A. In addition to payments otherwise authorized by this Chapter, as part of the cost of construction the agency may make a payment to the owner of real property acquired for a project which is improved by a dwelling actually owned and occupied by the owner for not less than one hundred and eighty days prior to the initiation of negotiations for the acquisition of such property, not to exceed *1183 fifteen thousand dollars. Such additional payment may include the following elements:
(1) The amount, if any, which when added to the acquisition cost of the dwelling acquired by the agency, equals the reasonable cost of a comparable replacement dwelling which is a decent, safe, and sanitary dwelling adequate to accommodate such displaced person, reasonably accessible to public services and places of employment and available on the private market. All determinations required to carry out this subparagraph may be made in accordance with standards established by the head of the agency making the additional payment."
Handbook of Relocation Assistance, Paragraph 10
"Comparable Dwelling: A "comparable dwelling" is one which is decent, safe, and sanitary, as defined in the brochure, and is functionally equivalent and substantially the same as the acquired dwelling with respect to: (a) number of rooms; (b) area of living space; (c) type of construction; (d) age and (e) state of repair, and open to all persons regardless of race, color, religion, sex or national origin. The replacement dwelling to be located in an area not generally less desirable than the dwelling to be acquired in regard to: (a) public utilities and public and commercial facilities; (b) reasonably accessible to the displacee's place of employment; (c) adequate to accommodate the displacee; (d) in an equal or better neighborhood; (e) available on the market to the displaced person, and (f) within the financial means of the displaced family or individual."
The threshold question in our treatment of this assignment of error is whether the trial court erred in admitting parol evidence concerning the consideration of the Polk sale.
Louisiana's parol evidence rule is evidentiary and not substantive. Wade v. Joffrion, 387 So.2d 1265 (La.App. 1st Cir. 1980). If not invoked at trial via proper objection, the right to later object to parol evidence is waived and may not later be invoked in an attempt to exclude evidence. First National Bank of Ruston v. Mercer, 448 So.2d 1369 (La.App. 2nd Cir.1984).
In the case sub judice DOTD did not object to the admission of the evidence complained of, therefore, it waived its objection and may not now urge for the first time that the trial court relied upon parol evidence.
An appellate court must defer to the trial judge's factual findings on the intent of contracting parties, if its findings are reasonable, adequately supported by credible evidence and not manifestly erroneous. Commercial Bank & Trust Co. v. Bank of Louisiana, 487 So.2d 655 (La.App. 5th Cir.1986). Where the evidence is conflicting, an appellate court should not disturb the trier of fact's reasonable evaluation of one set of witnesses as credible, and its consequent rejection of the testimony of the opposing set of witnesses; nor should the reviewing court disturb the trier of facts reasonable factual inferences drawn from credible testimony. Billiot v. Bourg, 338 So.2d 1148 (La.1976).
Terry Brown, a DOTD employee who worked in property management and relocation in 1983 and 1984, characterized this case as follows:
"[T]his was an unusual set of circumstances. It was one of those hasty things that never happens except in fairy tales."
Robert David, DOTD's statewide relocation officer who met with Polk on June 8, 1984, said, "[T]his was an unusual case handled in an unusual manner."
Against this backdrop, the trial court concluded that DOTD promised Polk relocation and moving costs as part of the consideration of the sale. After a careful review of the record we find no error in this conclusion. From the testimony of Joseph Walker, one of the first DOTD representatives who met with the Polks, it was clear that he explained that it was DOTD's policy to leave a displaced person in a home as good as or better than the one in which they were found. Prior to the June 8 meeting Terry Brown had already reported to *1184 Robert David that there were no existing comparable homes in the geographical area of the Polk home, and Brown testified that he told the Polks their relocation plan had been submitted to Baton Rouge and had been approved.
Polk testified that David told her that DOTD would pay the difference between the appraised value of the property and the cost to reconstruct them in a new location; in particular, she said that David used the main residence and the swimming pool as examples of the improvements that might cost more to reconstruct than their appraised value. Kristie, Polk's daughter, was present at this conversation and corroborates Polk's testimony. Though Kristie's testimony is not made part of the record by DOTD, we must assume that the testimony supported the judgment of the trial court. See Laborde v. Velsicol Chemical Corp., 474 So.2d 1320 (La.App. 3rd Cir.1985), writ denied, 480 So.2d 738 (La. 1986).
DOTD stresses that the definition of "comparable" is found in its relocation handbook and that its definition is contrary to that assigned by the trial court. In its written reasons the trial judge stated:
"As previously stated, as part of the consideration defendant [DOTD] promised plaintiff [Polk] funds necessary to construct or purchase a `comparable' or similar home. Defendant throughout this litigation has taken the position that `comparable' means the same size with the same number of rooms. The Court finds otherwise. Comparable means not only of the same quantity (size and number of rooms) but also quality!"
We find support for the trial judge's determination in DOTD's handbook definition. One of the criteria listed in DOTD's definition is type of construction. There was explicit, uncontroverted testimony that Polk's home was specially finished with high quality workmanship and material. It was a beautiful, well-built and expensive home. It would make no sense to say that as long as DOTD paid for a home of equal footage and with a like number of rooms, it fulfilled its obligation to provide a comparable home. Therefore, we conclude that the trial court did not err in its refusal to accept DOTD's argument.
As part of the consideration for the sale the trial court determined DOTD also obligated itself to pay Polk's moving expenses. At trial and again on appeal DOTD asserts technical objections to this ruling, saying Polk was not an occupant of the home on June 8, 1984, and alternatively, if she was an occupant, she was only entitled to payment for the items actually in the home on that date.
We find, as did the trial court, that there is no merit to DOTD's argument. Polk had been in negotiation with DOTD in excess of a year and from the beginning impressed DOTD with her concern for the time that would be involved in relocating her large family. DOTD can not now seek refuge in its internal procedures when it delayed and failed to live up to the timetable it repeatedly communicated to Polk.

DETERMINATION OF RELOCATION COSTS
DOTD contends that the trial court erred in awarding Polk the highest estimate for relocation costs when the evidence showed that the items could be acquired with like quality and less cost.
The Polk home consists of: a main residence occupying 4,020 square feet, in a hexagonal shape; a guest house in a similar shape occupying 1,069 square feet; a car shed occupying 240 square feet; an equipment shed occupying 1,601 square feet; a barn occupying 2,075 square feet; a green house occupying 1,044 square feet; and an underground swimming pool. Three estimates were admitted into evidence. Rick Thompson drew a floor plan of an L shaped home of equal square footage for $164,441. His estimate did not include the out buildings or pool. John Girlinghouse prepared drawings of a house of equal utility to Polk's house, not including the out buildings and pool with the exception of the green house, and submitted an estimate of $204,711.23. On the basis of these bids DOTD advised Polk she was not entitled to relocation assistance.
*1185 A third estimate was prepared by Donald Mansour. He estimated that to replace Polk's home with a comparable dwelling, with like material, would cost $410,742.85. His estimate included everything.
The trial court based its judgment on the estimate prepared by Mansour, finding it was the most complete and the only one which produced a comparable home. Accordingly, it concluded Polk was entitled to receive additional consideration of $170,362.85, i.e., that difference between Mansour's estimate and the sum already paid by DOTD.
The weight afforded an expert's testimony is largely dependent on his qualifications and the facts on which his opinion is based. The trial judge has considerable discretion, which should not be disturbed absent manifest error, in accepting or rejecting expert testimony. Dubois v. State Through Dept. of Pub. Safety, 466 So.2d 1381 (La.App. 3rd Cir.1985).
The Polk home was well-built with expensive materials and properly maintained. The house with its out buildings is not the ordinary type home. The two lower estimates reflect the cost of a house that would be less in quality than the cost of the Polk house, and this was not the understanding DOTD gave Polk. The record clearly shows that before Polk signed the act of sale DOTD led Polk to believe that a comparable house would be as good in quality as the one DOTD was buying. After she signed the sale DOTD reneged and for the first time informed Polk by letter that she was not entitled to any relocation assistance and is now taking the position that a comparable house does not mean a house of the quality Polk had. DOTD argues that in spite of the agreement it had with Polk, she is not entitled to any relocation expense; it does not deny the understanding with Polk but disputes the meaning of comparable, and admits the case is unusual. We find that Polk is entitled to relocation assistance equalling the quality of her home because DOTD promised her this relocation assistance. The Mansour estimate was the most thorough and more closely reflects the true value of the house, the out buildings and pool. Therefore, after carefully reviewing the record, we cannot say that the trial court erred in basing its judgment on the Mansour estimate.

RECONVENTIONAL DEMAND
DOTD reconvened against Polk seeking to recover rent for her possession of the home from October 17, 1984, through January 17, 1986, the period of time during which the preliminary injunction prohibiting DOTD from exercising possession of the home was in effect. DOTD seeks rental totaling $18,628.50, calculated at ½ of 1% of $248,380, the purchase price.
Applicable to this assignment of error are the following codal articles:
LSA-C.C. Art. 2485
"If the seller fails to make the delivery at the time agreed on between the parties, the buyer will be at liberty to demand, either a canceling of the sale, or to be put into possession, if the delay is occasioned only by the deed of the seller."
LSA-C.C. Art. 2486
"In all cases, the seller is liable to damages, if there result any detriment to the buyer, occasioned by the non-delivery at the time agreed on."
LSA-C.C. Art. 2487
"The seller is not bound to make a delivery of the thing, if the buyer does not pay the price, and the seller has not granted him any term for the payment."
We find C.C. Art. 2487 dispositive of the present case. Polk resorted to a writ of injunction when she became aware that, as discussed hereinabove, DOTD was not paying her the consideration promised. Since DOTD did not pay the price agreed upon as found by the trial court, pursuant to Art. 2487 it is not entitled to any damages.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to DOTD.
AFFIRMED.
FORET, J., concurs and assigns written reasons.
*1186 FORET, Judge, concurring.
I file this concurring opinion to my esteemed colleague's excellent review only to observe that this is not an expropriation suit in the ordinary sense. It was a bargained and negotiated for contract of sale with an agreement for added compensation as relocation costs. I mention this to emphasize that the ordinary rules for the award of damages in the ordinary expropriation case were not involved in this case, and our decision herein should not be interpreted as deviating in any way from the existing jurisprudence as to damages recoverable in expropriation suits.