LOTTINGER, Judge.
This is an appeal by the State of Louisiana, Department of Social Services, from judgment in favor of plaintiff, Ms. Louise Zeringue, overruling the decision of the administrative law judge denying plaintiff Medicare benefits.
The trial judge in his reasons for judgment stated:
This is an appeal by Louise Zeringue from a judgment of an Administrative Law Judge denying her Medicare benefits.
The facts of this case are not contested. Louise Zeringue was admitted to the Audubon Nursing home since she was unable to care for herself. She applied for and received financial assistance from the State Of Louisiana to pay for her care at the nursing home. She had assets of less than $2,000.00 and her home. Her home did not qualify as an asset since she declared that she intended to return to her home in the event that she became able to do so. In this financial posture she was eligible for the benefits that paid for her care at the nursing home.
*1143 Several years later she became embroiled in a lengthy legal battle with the State of Louisiana. They wanted her home site to construct a bridge. The case was settled and Louise Zeringue received the sum of $84,767.83 for her home.
The State told her that she had to purchase a new home within three months or the $84,767.83 would be counted as a resource and she would have to pay for her own care at the nursing home until the funds were depleted to the sum of $2000.00. Louise Zeringue wants to place the funds in a trust or an account so that she may purchase a home should she ever get well enough to care for herself.
Louise Zeringue exhausted all of her administrative remedies[1] and has filed this appeal to the District Court.[2] In order for this Court to reverse the administrative decision of this agency this Court must find that substantial rights of Louise Zeringue have been, “_prej-udiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion of (sic) clearly unwarranted exercise of discretion; or
(6) Manifestly erroneous in view of the reliable, probative and substantial evidence on the whole record. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by firsthand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency’s determination of credibility issues.”
LSA-R.S. 49:964 G.
In applying these statutory standards this Court is mindful of the scope of review criteria set forth by the Louisiana Supreme Court in Save Ourselves v. La. Environ. Cont. Com’n, 452 So.2d 1152 (La.1984).
This Court finds that the decision of the agency is based upon its own written policy, which provides that:
“D. SSI RESOURCE CRITERIA
(1) Home and contiguous property are excluded regardless of value.
(2) -
(3)-
(4) -
(5) Liquid assets are what the applicant owns or controls; cash; checking accounts; savings accounts; money on deposit at a funeral home; a prepaid burial contract; promissory notes; mortgages; stocks bonds; mutual funds; U.S. Savings Bonds, (after 60 days); CSV of life insurance; personal property; or anything else available as cash on demand or which can be converted in twenty working days.
E. SSI COUNTABLE RESOURCES
Supplemental Security Income regulations allow an applicant recipient total countable resources as follows:
(1) Not to exceed $2,000.00 for an individual
(2) Not to exceed $3,000.00 for a couple.”
OFS Policy 19-1603[3]
*1144 The question as to whether funds generated by a State forced sale of a family home are to be considered as an asset in determining eligibility for benefits is a question de novo (sic) [res nova].
It is obvious from the reading of this policy statement that the purpose of this policy is the humane consideration that the elderly need not give up hope when they enter a nursing home. If they get better there will be a home for them to go to. To do otherwise would be to condemn our elderly to a life in a nursing home without the hope of ever healing and leaving. If they get better they have a right to have a place to go. The character of that hope is embodied in the family home.
In the present case the family home was taken from Louise Zeringue by the State. The sale of the home of Louise Zeringue was not a voluntary conversion of the house to cash by Louise Zeringue, it was the forced conversion of the home to cash by the State. The State can now not benefit from the forced conversion of the home to cash. The cash is the home. The State offered Louise Zeringue the opportunity to convert the cash into another home, but this is a vain and senseless offer. If she would buy another home while she is in the nursing home she would simply have a new house that she could not tend to.
The State has taken the home of Louise Zeringue and now they seek to take away her hope by a slow monthly erosion of the cash that is now her future home.
The decision of the Administrative Law Judge is overruled and the Department of Social Services is ordered not to consider the cash generated by the involuntary conversion of the home of Louise Zeringue as a resource when calculating her eligibility for benefits.
Counsel is instructed to prepare the judgment in accordance with these reasons.
THUS DONE, ORDERED AND SIGNED THIS 5TH DAY OF NOVEMBER, 1990, IN THIBODAUX, LOUISIANA.
ASSIGNMENTS OF ERROR
In appealing the State contends the trial court erred in:
1. Treating the Department of Transportation and Development and the Department of Social Services as one entity, the State.
2. Holding that Ms. Zeringue acquired the cash because of an involuntary act that the cash is not a countable resource.
I
Any reference by the trial court to the Department of Transportation and Development and the Department of Social Services as the State, or any inference that these two departments of state government merge into one party litigant, the State, is of no moment. We are convinced the trial judge made no such inference, nor does his decision rest on such an assumption. Therefore, we pretermit any further discussion of this assignment of error.
II
As to assignment of error number 2, we agree with the decision reached by the trial court and merely add the following.
The State argues OFS Policy 19-160, quoted by the trial judges in his reasons for judgment, is based on various sections of Title 20 of the Code of Federal Regulations. In particular, 20 C.F.R. § 416.1212 provides:
§ 416.1212 Exclusion of the home.
(a) Defined. A home is any property in which an individual (and spouse, if any) has an ownership interest and which serves as the individual’s principal place of residence. This property includes the shelter in which an individual resides, the land on which the shelter is located and related outbuildings.
(b) Home not counted. We do not count a home regardless of its value. However, see §§ 416.1220 through 416.-1224 when there is an income-producing property located on the home property *1145 that does not qualify under the home exclusion.
(c) If an individual changes principal place of residence. If an individual (and spouse, if any) moves out of his or her home without the intent to return, the home becomes a countable resource because it is no longer the individual’s principal place of residence. If an individual leaves his or her home to live in an institution, we still consider the home to be the individual’s principal place of residence, irrespective of the individual’s intent to return, as long as a spouse or dependent relative of the eligible individual continues to live there. The individual’s equity in the former home becomes a countable resource effective with the first day of the month following the month it is no longer his or her principal place of residence.
(d) Proceeds from the sale of an excluded home. The proceeds from the sale of a home which is excluded from the individual’s resources will also be excluded from resources to the extent they are intended to be used and are, in fact, used to purchase another home, which is similarly excluded, within 3 months of the date of receipt of the proceeds.
The trial judge was correct in pointing out that the question presented is res nova. Section 416.1212(d) in excluding the proceeds of the sale of a home refers only to the sale of a home and not to an expropriation or forced sale as in the present case. Absent specific reference to the transfer of ownership other than by ordinary voluntary sale, we must conclude that 20 C.F.R. 416.1212(d) did not intend to cover an expropriation or forced sale of plaintiff’s home. La.Civ.Code art. 11.
Therefore, for the above and foregoing reasons, the judgment of the trial court is affirmed. Costs are assessed against the Department of Social Services in the amount of $288.55.
AFFIRMED.

. The plaintiff must exhaust her administrative remedies before she can seek judicial review. O'Meara v. Union Oil Co. of California, 212 La. 745, 33 So.2d 506 (La.1947); Bounds v. State Department of Highways, 333 So.2d 714 (La.App. 2 Cir.1976); Anderson v. State, 363 So.2d 728 (La.App. 2 Cir.1978), writ denied, 364 So.2d 600.

. LSA-R.S. 49:951 thru 964 provides for judicial review in these circumstances. Even if the statute did not provide for judicial review this right exists independently of the statute. Bowen v. Doyal, 259 La. 839, 253 So.2d 200 (La.1971); Werner v. Bd. of Trustees of New Orleans Police, 360 So.2d 615 (La.App. 4 Cir.1978): Anderson v. State, 363 So.2d 728 (La.App. 2 Cir.1978).

.A copy of this written policy of the Office of Family Services is attached to his opinion as Appendix "A”